Clark *v.* The Nevada Land and Mining Company.

---

## ALLEN J. CLARK, RESPONDENT, *v.* THE NEVADA LAND AND MINING COMPANY, LIMITED, APPELLANT.

APPEAL IN CASE OF CONFLICT OF EVIDENCE. The rule that a judgment will not be disturbed as being against evidence, where there is a conflict of evidence, has been often enough announced to be considered settled.

PROSPECTIVE DAMAGES. Prospective damages in actions, such as for overflowing meadow lands and thereby injuring grasses for time to come, are allowed only upon proof that they are reasonably certain to occur.

DAMAGES TO HAY LANDS FOR FUTURE CROPS. Where in a suit for unlawfully overflowing plaintiff's grass lands, and thereby destroying crops, a judgment was given for damages already sustained, and also damages for loss of crops for the next two cropping seasons: *Held,* that the damage for the loss of future crops was entirely too prospective and conjectural, and that the judgment should be modified by striking it out.

ERRONEOUS INDIVISIBLE PART OF FINDING. If a finding contains erroneous matter, which cannot be divided from the remainder, the whole must fall.

GOLD COIN JUDGMENTS FOR DAMAGES. Under Sec. 202 of the Practice Act (Stats. 1869, 228) a judgment in gold coin for damages is proper.

CLAIMS FOR DAMAGES NOT DEBTS PAYABLE IN CURRENCY. A claim for damages is not (any more than a tax) a "debt" within the meaning of the Act of Congress relating to treasury notes, and the Legislature might therefore provide that a judgment therefor should be in gold coin, and not to be satisfied by payment in legal tender currency.

APPEAL from the District Court of the Third Judicial District, Washoe County.

Defendant, a corporation organized under the laws of England, has a mill in Washoe County, which is supplied by a large ditch or canal from the Truckee River. The water, after being used, is returned into the river. In the summer of 1869, on account of defects in the tail race or other causes, for which the Court below

found defendant responsible, the contiguous lands of plaintiff were overflowed and his crops destroyed, and he claimed damages therefor, as well as for loss of crops, " for two cropping seasons to come." Suit was commenced February 14th, 1870.

Three other cases of substantially the same nature and against the same defendant were submitted at the same time and with this case, all being argued together by the same counsel. They were decided in the same way, and upon the authority of the decision in the present case. The plaintiffs in these cases, which were for injuries to adjoining tracts of land, were Theodore F. Lewis, John J. Woodworth and Woodworth & Lammon respectively.

*Hillyer, Wood & Deal,* for Appellant.

I. Where there is a conflict in the testimony, the Court will not, as a general rule, look into it to see whether witnesses have testified truthfully or not; but it seems to us that where, in a sworn complaint, a party claims double the damages he testifies to at the trial, the Court should not give his testimony as much weight as that of a witness who testifies positively, and who from his business understood what he was testifying about.

II. To entitle a party to recover at all for prospective damages he must allege them with distinctness, and they must be proved with certainty. The measure of damages in cases of this kind is the actual damages sustained prior to the commencement of the action; prospective damages cannot be recovered, nor damages to the permanent value of the realty, unless specially claimed in the complaint. (*Thayer* v. *Brooks,* 17 Ohio, 489.)

It is true that in cases where a tort is committed, damages may be given for matters that occur subsequent to the time of bringing the action, but the material and proximate consequences of the act are alone to be taken into consideration. Such matters must be proved with certainty. (*Curtis* v. *Rochester and Syracuse R. R. Co.,* 18 N. Y. 548; *Bousen* v. *Nurrell,* 3 Chand. [Wis.] 46; *Brannen* v. *Johnson,* 17 Maine, 361; 6 Cal. 163; *The Schooner Lively,* 1 Gallisen, 314; *Walrath* v. *Redfield,* 11 Barb. 369; *Fuich* v. *Brown,* 13 Wend. 601; *Witbeck* v. *N. Y. Central R. R. Co.,* 36 Barb. 647; *Nightingale* v. *Scannell,* 18 Cal. 326;

*McWhurter* v. *Douglas*, 1 Cold. [Tenn.] 591; *Thomas* v. *Shattuck*, 2 Met. 615; *Brown* v. *Smith*, 12 Cush. 366; *Ingledew* v. *Northern Railroad*, 7 Gray, 86.)

III.   If plaintiff could recover for two future seasons, why not for a dozen?   It might happen, if this rule were allowed, that he could recover more than the actual value of the lands.   The judgment should at least be modified by striking out this item.

*Haydon & McElvaney*, for Respondent.

I.   The finding is substantially that by killing the grass for 1870 plaintiff was damaged $300.   If defendant had made default the Court below could have granted relief to the extent of the damage claimed in the complaint, and upon trial the Court could grant any relief consistent with the case made by the complaint and embraced within the issue.   A damage of $300 for killing grass for two seasons was alleged : the Court found damage by having such grass killed for one season.   This was within the case made by the complaint, and consistent with the issue.

II.   The injury stated in the complaint is the killing of the valuable grasses growing on the land at the time of the overflow, and that such overflow would bring up tule and worthless productions for two cropping seasons to come.   The Court found that the overflow had killed the grass, and would produce the next year only half a crop, and the next only worthless grasses.   The injury was done before the suit was brought ; the direct and proximate result of such injury had killed the roots or germs of more than half the valuable grass growing on the land, and had germinated tule and other worthless productions.   The damage was the difference between the yield of the land after the overflow and before the overflow, the Court finding from the evidence that the land would not produce by reason of the injury more than one half the crop it did in 1869, and the seasons before that time.   There was nothing prospective about the damage : both the injury and the damage had been done before the suit was brought.

III.   The damage accrued under the evidence without considering the cost of ridding the land of the noxious productions germ-

inated by the water standing on it from July 15th, 1869, till February, 1870, when the suit was brought, and without considering the effect of the overflow on the crop of 1871.    In *Harvey* v. *Sides S. M. Co.*, 1 Nev. 542, the Court holds that in cases of injury to land the cost of restoring it to its original condition is the true measure of damages, except when the cost would exceed the value of the land, in which case the value of the land would be the true measure of damages.    In this case, under the evidence the injury would cost the loss of one half the crop in 1870 at any rate; nature might restore it after that; husbandry could not restore it before, for under the evidence the water remained on all the land until March, 1870, and it would have been too wet and too late to have plowed and sowed it after that, and realized a crop of grass in 1870.

By the Court, WHITMAN, J.:

This case was tried by the District Court without a jury, and judgment rendered for respondent, for sixteen hundred and twenty dollars in United States gold coin, coupled with an injunction.    The judgment was for damages suffered by respondent by reason of the overflowing of his hay fields, and consequent injuries by water from appellant's tail-race, improperly constructed and negligently cared for.    The injunction was for the prevention of future injury from the same cause.    So far as the appeal is taken from the general judgment, save as hereinafter noticed, not only is there sufficient evidence to warrant the findings and judgment, but it vastly preponderates in favor of respondent; and the rule of decision where there is a conflict of evidence has been often enough announced to be considered settled.    (*Covington* v. *Becker*, 5 Nev. 281.)    The injunction was also fully warranted by the pleadings and evidence.

The only point upon which doubt arises is the allowance of three hundred dollars for that, as found by the District Judge, among other matters, this overflow spoken of had " killed the grass suitable for hay on his [Clark's] land, leaving it bare and thin in large portions, and bringing up the present season worthless grasses in lieu of good hay-grass growing on the same land last season, and

causing such land to be capable during the season of 1870 to produce not more than half its usual crop, and thereby injuring plaintiff's land during the present season to the extent of three hundred dollars of its value."

This finding was based upon pleading which averred a damage of three hundred dollars, by reason of loss of crop for the next two cropping seasons; and upon evidence which showed that damage to be entirely prospective, and almost purely conjectural. Prospective damages in an action like the present are allowed only upon proof that they are reasonably certain to occur.

The proof as presented in the record does not come up to the rule. The case was tried in May of the present year, and the respondent testifies: "I have been over the land within the past few days. In some places tule is coming up, and in one or two small places no grass is growing. The grass is just commencing to come up now in the meadow land. I cannot tell what kind of a crop will grow this year, but in my opinion the land will be useless for two years to come. I consider that I will lose three hundred dollars by reason of the loss of the use of this land for these two seasons. I can't say that I know the effect water has upon land by standing on it. The land is dry now, and if no water runs on it hereafter the tules will die out and good grasses come back again. Prior to this year this land produced the finest quality of hay; now there is as much as fifteen acres bare of grass. Tule in spots is growing all over the ranch."

E. J. McClennan testified: "The water is all off the land now. It is impossible to say what kind of a crop will be produced this season on this land.   *   *   *   I saw the plaintiff's land yesterday. It is impossible to say whether any of the roots of the grass are killed. All land is benefited by water standing on it, if it does not stand too long."

Colwell testifies: "The water standing through the warm weather last summer and fall, and through this winter, on plaintiff's ranch, has drowned out the grass on at least one-fourth of his hay land entirely, and on other parts it is very thin, where last year and before it was very thick, and on an average it will not produce this year, in consequence of such overflow, over half the crop of

hay it produced last year and before that time, and it will not be so good in quality.

Theo. F. Lewis testifies: Clark "had over one hundred acres overflowed last year. That land, except about ten acres, has always produced the very best hay, first quality. The hay last year, on this land, except on the ten acres, was worth ten dollars per ton, standing, and on an average would have yielded at least one ton to the acre. From appearances, much of it will produce water grass this season; about one-half of that land, from its appearance now, will produce a fair crop; the other half will be worthless. * * * I know the effect water has on land where it stands for a considerable time in that neighborhood. It brings up late and water grass, and kills out the grass of value for hay."

Taking all this testimony together, it will be seen that it is eminently uncertain and was insufficient to warrant the finding recited. Had the finding closed with the propositions that portions of the ground were bare and the roots of the grasses killed, it might have stood; but those propositions are connected with the bringing up of worthless grasses, and the non-producing qualities of the land for the season of 1870, which are prospective and uncertain. These propositions and the damages resulting therefrom cannot be divided, so the whole finding must fall. The amount thus found must be remitted.

It is objected that the judgment is for gold coin. The Practice Act of this State provides: " In all cases of damage the judgment shall be for gold coin." (Stats. 1869, 228, Sec. 202.) The Supreme Court of the United States has held that a judgment against a county treasurer for gold coin, collected for taxes under a statute of the State directing collection in such currency, was good upon the ground principally that as a tax was not a debt, nor in the nature of a debt, the Legislature might properly pass such a law: and such a claim could not be satisfied by the payment of the legal tender paper currency of the United States. (*Lane County* v. *Oregon*, 7 Wallace, 71.) A claim for damages is not a debt, and it would seem upon analogous principle to that underrunning the decision quoted, a State Legislature might lawfully make such provision as is contested here. The appellant here has offered no

argument in support of its objection, and certainly this Court will not hunt reasons for abrogating a statute which is practically just, and whose object could undoubtedly be reached in every case by proof.

The judgment of the District Court will then be modified by deducting from its gross amount three hundred dollars; otherwise it is affirmed.