[No. 1457.]

## GEORGE WATT, RESPONDENT, v. THE NEVADA CENTRAL RAILROAD COMPANY, APPELLANT.

EVIDENCE—INCOMPETENT, ADMITTED AT TRIAL, ENTITLED TO FULL WEIGHT.—
Evidence may tend to prove the issues in a case, and yet be incompetent; but, if such evidence be admitted at the trial of a case without objection, full weight must be given it in considering the question whether or not the evidence is sufficient to sustain the findings.

DAMAGES—TESTIMONY OF FORMER EMPLOYEE OF RAILROAD TENDING TO SHOW HABIT ON THE ROAD OF RUNNING ENGINES, PERTINENT.—In an action to recover damages caused by a fire negligently set by a locomotive, the testimony of a former engineer that he generally kept both dampers of the ash-pan open, except when going over a bridge, and that other engineers for whom he had fired did the same, is admissible to show the habit on defendant's road of running the engine with both dampers open.

NEGLIGENCE—DUTY OF RAILROAD COMPANY—CHARACTER OF ENGINES.—It is the duty of a railroad company to supply its road with such engines as will be least liable to set fire, and be reasonably safe from destroying property of others along its line, and the failure to do so is want of ordinary care and prudence.

FACTS CONCERNING DANGER FROM ENGINES, COMMON KNOWLEDGE.—It is common knowledge, based on common observation, in this railway age, that railroad engines of the most approved construction, and with the best known appliances, and managed by the most skillful engineers and firemen, are liable to, and do frequently, from necessity or by accident, emit sparks and fire, capable of igniting dry rubbish or combustible matter along their pathway.

DUTY OF RAILROAD COMPANY—TRACK REASONABLY CLEAR OF COMBUSTIBLE MATTER.—A railroad company must be diligent in keeping its track and right of way reasonably clear of all combustible matter as is liable to be ignited by sparks or cinders from its engine, and thence communicated to the property of adjoining owners.

EVIDENCE OF CAUSE OF FIRE—SUFFICIENCY OF.—Evidence of several persons that they had frequently seen fires started immediately after defendant's train had passed; that the fire that destroyed plaintiff's property occurred shortly after the passage of a train; that one of witnesses, on subsequent investigation, had seen coals scattered along the track; and that the wind was blowing from the right of of way towards plaintiff's premises, was sufficient, especially in the absence of testimony pointing to any other probable agency, to justify a finding that the fire was set by defendant's locomotive.

VERDICT CONTRARY TO EVIDENCE—NO SUBSTANTIAL CONFLICT—NEW TRIAL.— If there be no substantial conflict in the evidence upon any material point, and the verdict or decision be against such evidence upon such point, or where the verdict or decision strikes the mind, at first blush, as manifestly and palpably contrary to the evidence, the supreme court will direct a new trial.

IDEM—FINDING BASED ON INSUFFICIENT EVIDENCE.—Uncertain estimates, of plaintiff and his neighbors, of the number of loads stacked, the weight of the loads, and the height of the stacks, cannot be considered as reaching the rank of conflicting evidence sufficient to support a finding based thereon, in view of evidence of the actual number of acres of hay land, as ascertained by a reliable survey of the ground, and the fair average yield of two tons per acre, as admitted by the plaintiff.

DAMAGES—POSSIBILITIES AND CONJECTURES NOT CONSIDERED IN ESTIMATING.— Loss which may arise at some indefinite future period through the destruction of hay which plaintiff had for several years been saving, to feed his stock in case a severe winter should come, is too conjectural to be considered in estimating damages.

VALUE OF HAY DESTROYED—NEAREST MARKET VALUE GOVERNS.—As the hay had no value for present use, and no ascertainable value for future use as food for plaintiff's stock, in the absence of a showing that it had any greater market value where it was situated, its value in the nearest market, at the time it was destroyed, less the cost of transportation, must control.

VALUE—FINDING NOT SUPPORTED BY EVIDENCE.—The finding that the value of plaintiff's hay press was two hundred dollars, the sum alleged in the complaint, is not supported by the evidence, there being no evidence in the record tending to show any greater value of the press than it cost at plaintiff's ranch.

ON REHEARING.

MEASURE OF DAMAGES—VALUE OF HAY DESTROYED BY FIRE.—In an action against a railroad company for destruction of hay by fire, it appearing that there was no market for the hay at the place where it was destroyed, the measure of damages is the value of the hay at the nearest market, less the cost of transportation there, and not such value plus the cost of transportation from such market to the place where the hay was destroyed.

APPEAL—ASSIGNMENT OF ERROR—INSUFFICIENCY OF EVIDENCE—FINDINGS OF FACT—REVIEW.—Under Stats. 1893, p. 89, which provides that, when the motion for a new trial designates, as the ground thereof, the insufficiency of evidence, it shall be a sufficient assignment of error to specify that the decision is not supported by, or is contrary to, the evidence; and if the evidence, taken altogether, does not support the decision, on appeal, the case shall be reversed, without regard to whether there are express findings upon all of the issues. Where the assignment is that "each and every part of each and every finding of fact by the court is wholly unsupported by the evidence, and against the evidence," the appellate court is not bound by an express finding of the lower court on a certain issue, unless supported by the evidence.

APPEAL from the District Court of the State of Nevada, Lander county; *A. L. Fitzgerald*, District Judge:

Action by George Watt against the Nevada Central Railroad to recover damages for loss of property caused by fire from defendant's engine. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

The facts sufficiently appear in the opinion.

*O. A. Murdock, James F. Dennis,* and *Dickson, Ellis & Ellis,* for Appellant: ·

I. It appears from the plaintiff's own testimony that he had no use whatever for his hay at the time of its destruction; that up to the time of the trial he had had no use for it, nor would he have made any use of it had it not been destroyed, and, furthermore, that he never would have had any use for it in the future unless a winter of unusual severity should make it necessary to use it in feeding his stock. How much stock he had nowhere appears in the evidence. For aught that does appear, the hay that was destroyed was more than twice as much, or, for that matter, five times as much as would be needed to carry all the stock that he had through

any winter, no matter how severe. The burden is upon the plaintiff to establish the damages which he has sustained. If he would recover anything beyond nominal damages, he must make it appear that he has suffered more than nominal damages. If in any case he may be permitted to recover damages in excess of the market value of the property lost, and seek to do so, he should be required to show clearly that the market value will not compensate him, and clearly to what extent it would fall short of compensating him.

II. If this judgment were permited to stand, the plaintiff would recover from the defendant $9,760 for property, which, if we take the plaintiff's own word for it, would never have had any value to him except upon the contingency of a winter of unusual severity, and then such part of it only would have any value as might be required to feed such stock as he might have. In the absence of such a winter the hay would have been suffered to stand and rot upon the ground. Such a contingency is too remote and uncertain to be made the basis for the allowance of prospective damages. It is too uncertain as the basis for a judgment for damages in a court of justice. Compensation, just compensation only, in the light of the evidence, is the object which the law seeks to attain.

III. In all cases of tort, as in an action founded upon a breach of contract—unless the defendant is chargeable with malice, or with willful or intentional wrong in respect of the act complained of, such as would expose him to vindictive or punitive damages—just and full compensation for the plaintiff's loss is the measure of damages. This rule is sanctioned by the principles of natural justice. It is the limit which the law also has set to the plaintiff's recovery. (*Baldwin* v. *Porter*, 11 Conn. 483; *Waters* v. *Stevenson*, 13 Nev. 157; Sutherland on Damages, vol. 1, p. 17; *DeCosta* v. *Mass. Mining Co.*, 17 Cal. 613; *Harvey* v. *The Sides S. M. Co.*, 1 Nev. 539; Sedgwick on Damages, vol. 1, sec 172; *Strohm* v. *R. R. Co.*, 96 N. Y. 305; *Covert* v. *Gray*, 34 How. Pr. Rep. 450; *Clark* v. *The Land Mining Co.*, 6 Nev. 203.)

IV. In determining the value of an article in a case such as this, the market price is the test usually applied, and if there is no market for the article at the place where the

plaintiff would be entitled to compensation, the value at the nearest market governs, adding thereto or deducting therefrom the cost of transportation as the equity of the particular case may require. (1 Sedgwick, Dam., secs. 244–246; 2 Sutherland, p. 375; 2 Sedgwick, sec. 495.)

V. What is meant by the market price or value of an article and how it is to be ascertained, is well stated in the case of *Lawrence* v. *Boston*, 110 Mass. 126. (*Railroad Co.* v. *Woodruff*, 49 Ark. 390; *Blydenburgh* v. *Walsh*, Baldw. 331, being case No. 1583 of the Federal cases.)

VI. Before the plaintiff can recover at all in this action, it is incumbent upon him to affirmatively establish by a satisfactory preponderance of proof: (1) That the defendant, through its agents or employees, actually caused the fire to the damage of plaintiff. (2) That it was due to some negligence of the defendant. " The general theory is that a party is not responsible for the reasonable exercise of a right unless upon proof of negligence, unskillfulness or malice in the exercise of that right." (*Burroughs* v. *Housatonic R. R. Co.*, 15 Conn. 124; *R. R. Co.* v. *Yeiser*, 8 Barr. 366.) We cite these cases in connection with both propositions, for the sake of convenience, since evidence which would be competent on the question of the cause of the fire, as well as on the question of the defendant's negligence, is so blended that the cases are equally applicable upon both points, and, if plaintiff shall fail in establishing either of the points as to the cause of the fire or as to defendant's negligence, he must wholly fail in his case. This was held in the case of *Longabaugh* v. *V. & T. R. R. Co.*, 9 Nev. 284, and we take it cannot be successfully denied by counsel for the plaintiff. Plaintiff must prevail on both points or fail altogether.

VII. Negligence is an independent fact which must be established by proof, and the mere proving that the engine started the fire (which is denied) would not be sufficient, under the circumstances in the case, to show that there was negligence. When this railroad company was incorporated under the laws of the state of Nevada, it had the right to operate its engine by steam. It is a fact of common knowledge that the engine will emit sparks and drop some coals, and in the exercise of its franchise it had a right, under the

law, to use fire to generate steam, and to emit sparks from its
engine.   True, it had no right to carelessly emit sparks in
such a manner as to set fire to property along the line of its
road, and the mere emission of sparks, if any were emitted
(which we deny), or the dropping of coal by the engine, is
not a *per se* negligence.   (*Denver T. & G. R. Co.* v. *DeGraff*,
29 Pac. (Colo.) 665.)

*Henry Mayenbaum*, for Respondent:

I.   This case is sustained on all points, not only by pre-
ponderance of evidence, but by evidence beyond a reasonable
doubt.   On appeal, however, it is enough that the evidence
tends to prove the issues.   This rule prevails everywhere,
and has been insisted upon by this court in numerous cases
in the Nevada reports.   There is no exception taken, as all
the evidence was admitted without objection under the stipu-
lation.   Without recurring to the numerous cases in the
Nevada reports, it is sufficient to cite the case of *Vietti* v.
*Nesbitt*, 22 Nev. 390, where this court tersely lays down the
rules:   (1) That where "testimony is admitted without
objection no advantage of the fact of its incompetency can
be taken afterwards."   (2) "Facts found by the trial court
upon conflicting evidence are conclusive on appeal." (Hayne
New Trial and Appeal, sec. 98.)

II.   The cases bearing on the questions treated upon in
this brief are very numerous.   The following will suffice to
illustrate every point in the case at bar.   Almost every one
of these authorities cited here has a number of points appli-
cable to the case at bar: *Billings* v. *Fitchburg R. Co.*, 58 Hun,
605; *Black* v. *Aberdeen & W. E. R. Co.*, 115 N. C. 667; *Blue* v.
*Aberdeen & W. E. R. Co.*, 23 S. E. 275; *Chicago, St. P., M. &
O. Ry. Co.* v. *Gilbert*, 52 Fed. 711; *Chicago & E. R. Co.* v.
*Zimmerman*, 40 N. E. 703; *Chicago, St. L. & P. R. Co.* v.
*Barnes*, 2 Ind. App. 213; *Collins* v. *N. Y. Central*, 58 Hun,
601; *Clune* v. *Milwaukee & N. Ry. Co.*, 75 Wis. 532; *Cantlon*
v. *Eastern Ry. Co.*, 45 Minn. 481; *Cole* v. *Lake Shore & M. S.
Co.*, 63 N. W. 647; *Deane* v. *Chicago, M. & St. P. Ry. Co.*, 39
Minn. 413; *Flinn* v. *S. F. & S. J. R. R.*, 40 Cal. 14; *Fort Scott
Ry. Co.* v. *Tubbs*, 47 Kan. 630; *Fort Worth Ry. Co.* v. *Hogsett*,
67 Tex. 685; *Fort Worth Ry. Co.* v. *Wallace*, 74 Tex. 581; *G.*

*T. R. R.* v. *Richardson*, 91 U. S. 454; *G. C. & S. F. Ry. Co.* v. *Kluge*, 17 S. W. 944; *G. C. & S. S. Ry. Co.* v. *Johnson*, 54 Fed. 474; *Greenfield* v. *Ry. Co.*, 83 Ia. 270; *Gram* v. *Ry. Co.*, 1 Md. 252; *Genung* v. *Ry. Co.*, 31 N. Y. Supp. 97; *Gibbens* v. *R. R. Co.*, 66 Wis. 161; *G. H. & S. A. Ry. Co.* v. *Polk*, 28 S. W. 353; *G. R. Ry. Co.* v. *Brinkman*, 64 Md. 52; *Hagan* v. *Ry. Co.*, 86 Mich. 615; *Haugen* v. *Ry. Co.*, 3 S. D. 394; *Hockstedler* v. *R. R. Co.*, 88 Ia. 236; *Hayes* v. *Ry. Co.*, 45 Minn. 17; *Ry. Co.* v. *Overman*, 110 Ind. 538; *Ry. Co.* v. *Searight*, 28 S. W. 39; *Ry. Co.* v. *Peninsular Co.*, 27 Fla. 157; *Knowlton* v. *Ry. Co.*, note 1, L. R. A. 625; *Kelsey* v. *R. R. Co.*, 45 N. W. 204; *Kertz* v. *Ry. Co.*, 84 Wis. 171; *Ry. Co.* v. *Hart*, 119 Ind. 273; *Ry. Co.* v. *Nitsche*, 126 Ind. 229; *Longabaugh* v. *V. & T. R. R. Co.*, 9 Nev. 271; *Martin* v. *Ry. Co.*, 62 Hun, 181; *Miller* v. *Ry. Co.*, 90 Mo. 389; *Ry. Co.* v. *Kellogg*, 94 U. S. 469; *Ry. Co.* v. *Goode*, 26 S. W. 441; *Moore* v. *Ry. Co.*, 78 Wis. 120; *N. P.* v. *Lewis*, 51 Fed. 658; *O'Neil* v. *Ry. Co.*, 115 N. Y. 579; *Ry. Co.* v. *Trapp*, 4 Ind. App. 69; *Pattent* v. *R. R. Co.*, 87 Mo. 117; *R. R. Co.* v. *Hogsett*, 87 Tex. 687; *Smith* v. *Ry. Co.*, 55 N. W. 717; *Stacy* v. *R. Co.*, 85 Wis. 225; *R. Co.* v. *Ransom*, 33 Fla. 406; *Sugarman* v. *R. Co.*, 42 N. Y. St. Rep. 30; *R. Co.* v. *Walsh*, 38 N. E. 535; *Ry. Co.* v. *Gaines*, 26 S. W. 433; *Ry. Co.* v. *Keller*, 36 Neb. 189; *Ry. Co.* v. *Eddy*, 41 Pac. 413; *Yankton F. I. Co.* v. *Fremont*, 64 N. W. 514.

III. The questions involved in this case are very simple: (1) Did defendant have, on its right of way, dry grass capable of being ignited? (2) Did the engine of defendant set it afire and burn plaintiff's property? (3) What was the value of the property burned?

IV. If there was an accumulation of dry grass on the right of way, and the defendant's engine set it afire, by means whereof the plaintiff's property was burned, all the testimony in regard to engines is of no avail. They may be the most perfect extant, yet the defendant is liable for the property burned. (*Longabaugh* v. *V. & T. R. R. Co.*, 9 Nev. 301.)

V. All the testimony of the defendant about their engines amounts to nothing, because it is conceded, even by Mr. Slater, that all engines throw fire.

VI. Mr. Watt testified that the reason of accumulating a

large quantity of hay was that he had lost $100,000 of stock in the hard winter of 1889. He could have saved at least $50,000 worth of stock if he had the quantity of hay that defendant burned; that this hay is worth to him $50,000. He piled up this hay to feed his stock and to avoid the calamity of 1889 in the future. As his stock accumulated, so he kept pace with the accumulation of hay. However, he only sued for the actual value of the hay. The hay was red-top, and the best in the country. There was none for sale. The hay was worth $20 per ton at least. He could not replace it for less. There was none for sale nearer than Carson valley. He bought last year, at Battle Mountain, inferior hay at $18 per ton and it cost $10 freight from Battle Mountain to Watt's Reese river ranch, which would make the value at the ranch $28 per ton. Austin hay is not as good as the hay burned. In Austin the hay was, last year in October, $10 to $12 per ton. The value of the hay burned is twice the value of Austin hay. He would not sell, but if he were compelled he would not take less than $20 a ton.

VII. The compensation for the destruction of the hay is the sum of money which will enable Mr. Watt to replace it. And that, a complete indemnity, requires that Mr. Watt should receive the sum which would enable him to replace the hay. Sedgwick, sec. 246, says: "If there is no market for the article at the place where the plaintiff would be entitled to compensation, the value at the nearest market governs. In addition to this the cost of the transportation of the property to the place of compensation is usually to be added." There is no market at Watt's, hence the value of the hay at the nearest market governs. In addition to this the costs of transportation to Watt's ranch must be added. Otherwise he could not replace it where he had it for his use and not for sale.

VIII. The statute of 1893, p. 88, was only intended, and so it appears by its express language, to do away with the technicality of making specifications of error. But it does not say that, where there is any substantial evidence proving, or tending to prove a fact, the supreme court can reverse a case because there is opposing testimony contradicting the fact. The statute has not abrogated the rule which uni-

versally prevails in all appellate courts. The supreme court has no such power. The constitution guarantees the right of trial by jury, or by the court sitting as a jury, if the parties so agree. Upon any issue their verdict or decision is conclusive if founded on any substantial proof. However prone we may be to think ourselves competent to judge of testimony, by merely reading the same, it is utterly impossible to judge of it as the jury and court who tried the case, and who had the living witnesses before them, and therefore could see their demeanor, hear their statement, weigh their candor, hesitation, faltering, prejudice, motive, etc.

IX. Mr. Watt could only put himself in the same condition in which he would have been if the hay was not destroyed by a sum of money which would enable him to buy the same quantity of hay at the nearest market and ship it and place it at his ranch where his hay was destroyed by the defendant. We must ever keep in mind that the court below did not allow the transportation charges. The judgment is only for $10 per ton, the market value in all the Reese river country. It surely cannot be that the rule which, according to all authorities, gives to Mr. Watt the transportation charges, should be applied against Mr. Watt so as to deduct from the market value at Austin what ought to have been added by the court below, and this to the entire destruction of his right to recover anything. (Sutherland on Damages, 174.)

By the Court, BONNIFIELD, J.:

This action was commenced by the plaintiff in the district court of the state of Nevada, in and for Lander county, to recover of the defendant damages for the destruction of a certain lot of hay, a hay press and for injury to pasture land of the plaintiff alleged to be caused by fire from the defendant's railroad engine. The case was tried by the court without a jury, and judgment given in favor of the plaintiff for $10,060 damages, the value of the property destroyed, as found by the court, with legal interest and $1289 70 costs. The defendant appeals from the judgment and order of the court denying the motion for a new trial. One of the grounds on which said motion was based is: "Insufficiency

of the evidence to justify the decision of the court." The findings of fact on the issues made by the pleadings are very full and voluminous, and to each material finding the defendant excepted on the ground "that the same is wholly unsupported by the evidence and contrary thereto."

Appellant's counsel argues that the findings are not supported by competent evidence, and this court is asked to exclude all incompetent evidence from its consideration in reviewing the testimony to determine its sufficiency or insufficiency to support said findings. But evidence may tend to prove the issues in a case and yet be incompetent. If such evidence be admitted at the trial of a cause, full weight must be given it in considering the question whether or not the evidence is sufficient to sustain the findings. (*Vietti* v. *Nesbitt*, 22 Nev. 390; *Sherwood* v. *Sissa*, 5 Nev. 349; *McCord* v. *O'Neall*, 16 Cal. 397; *Pierce* v. *Jackson*, 21 Cal. 636; Hayne, New Trial and Appeal, sec. 98.)

In the present case all evidence offered was admitted without objection, by stipulation of the parties, except hearsay evidence. The argument of counsel is more pertinent to the question as to the weight of the evidence than to the matter of its competency.

There is no contention as to the sufficiency of the findings of fact to support the judgment, and we do not deem it necessary to consider but a few of the many findings and review but portions of the evidence upon which they seem to be based. It is admitted by the defendant that its railroad track and right of way pass through the meadow land of the plaintiff where it is alleged the fire occurred and his property was destroyed. The court found "that on the 11th day of October, 1893, the defendant, while running its train of cars on said track and right of way over and across said lands, carelessly and negligently used and operated a locomotive engine defectively constructed and carelessly and negligently omitted to use proper appliances to prevent the emission of sparks, burning coals and fire from said engine, and carelessly and negligently omitted to keep the said right of way free and clear of dry and combustible materials, but carelessly and negligently permitted the accumulation of large quantities of dry grass and weeds on said right of way

adjoining the said land of plaintiff, and negligently and carelessly permitted its said engine to emit and drop sparks, burning coals and fire into said dry grass and weeds on said right of way adjoining plaintiff's said land, and thereby the defendant negligently and carelessly ignited and set on fire said grass and weeds, and negligently and carelessly permitted the said fire to spread in a continuous fire to said pasture lands, hay and hay press, and carelessly and negligently permitted said pasture, hay and hay press to be wholly destroyed by said fire without any fault of the plaintiff."

*Proper Appliances:* Is the finding that the defendant negligently omitted to use proper appliances to prevent the emission of sparks, burning coals and fire from the engine supported by the evidence? It is admitted by the evidence on the part of the defendant that there was no wire or iron netting or screen in the ash-pan of engine No. 1, the engine that hauled the train on the day the fire occurred. There is evidence on the part of the plaintiff that if there be no such netting in the back door of the ash-pan, that, when the back damper is open and the engine is moving forward, hot cinders and coals of fire are liable to and do drop out through the back door when the damper is up, and are liable to ignite the oil which leaks more or less from the train and set fire to combustible material on and by the side of the track; that there is naturaly a certain amount of burning coals that drop into the ash-pan, and, in the absence of such netting, the natural shaking of the engine in motion, when the damper is raised, will roll these coals out on the ground, and, if there be combustible matter on the ground, they will set it on fire; that when these coals drop out they may strike the end of the ties and roll three or four feet from from the track; that it is necessary to have the back damper of the ash-pan open to get draft; that both dampers are nearly always open except when crossing a bridge; that by some means said engine No. 1 set six fires in passing along on a ranch adjoining the plaintiff's ranch about a month before the fire in question. Walter Davis testified that he was engineer on this road about two and a half years; that he quit about the middle of February, 1893; that he generally ran with both

dampers open except when going over a bridge; that he fired about two years and a half for seven different men on this road before he became engineer; that these men always ran with both dampers open, and made him run that way. The testimony of Davis is pertinent as tending to show the habit on this road of running the engines with both dampers open. (*Grand Trunk R. R.* v. *Richardson*, 1 Otto, U. S. 454.) There is a great deal of other evidence tending to show the necessity of such netting in the ash-pan to prevent fire escaping therefrom. On the contrary there is evidence on the part of the defendant tending to prove that coals of fire or hot cinders will not escape through the door of the ash-pan when the damper is up, even in the absence of said netting; that there is no necessity of having such netting; that the engineer who ran engine No. 1 on the day of the fire always kept the back damper of the ash-pan closed, and that said engine was in good and safe condition, and had all the necessary appliances to prevent the escape of fire.

We cannot say that the evidence is not sufficient to support the finding as to the want of proper appliances. At least there is a substantial conflict of evidence with reference thereto, and in such case the appellate court will not interfere. (*Vietti* v. *Nesbitt, supra; State* v. *Yellow Jacket*, 5 Nev. 115; *Clark* v. *Nevada L. & M. Co.*, 6 Nev. 203.)

"The rule that the supreme court will not consider the weight of conflicting evidence has been so often reiterated as to become somewhat monotonous." (*McCoy* v. *Bateman and Buell*, 8 Nev. 126.)

That it is the duty of a railroad company to supply its road with such engines as will be least liable to set fire and be reasonably safe from destroying property of others along its line, is well settled. "A railroad company is obliged to employ the best known appliances to prevent injury to others from fire, and the failure to do so is want of ordinary care and prudence." (*Longabaugh* v. *V. & T. R. R. Co.*, 9 Nev. 271; *Rogers* v. *Brighthope Ry. Co.*, 8 Am. & Eng. R. R. Cases, 710; Thompson on Negligence, 154–5.)

*Rubbish on Right of Way*: As to the finding "that the defendant negligently omitted to keep the said right of way free and clear of dry and combustible material along and

adjoining said land of plaintiff, and carelessly permitted the accumulation of large quantities of dry grass and weeds on said right of way adjoining said land," we are of opinion it is abundantly sustained by the evidence, which is without material conflict. The evidence is to the effect that the rye grass grows right along the side of the track from eight inches to three feet in height; that there was more or less dry stubble grass which had grown up in the center and on the edges of the track on the right of way through plaintiff's said land; that there was dry grass there all along the right of way; that it was not a foot from the end of the ties; that the tall grass extended along the track the length of the field; that at the place of the fire there was quite a bunch of rye grass more than at any other place along the line; that it was four or five feet high; that when the fire occurred this grass was very dry, as dry as it could be, and would easily take fire; that in the fall of the fire it had not been cut off any further than the end of the ties; that there was dry grass all along the right of way there, fifty feet on each side of the railroad, that was not cut, and that the dry grass they had cut between the rails was left there and would easily ignite.

We are of opinion that we are justified in saying that it is common knowledge, based on common observation in this railway age, that railroad engines of the most approved construction and with the best known appliances, and managed by the most skillful engineers and firemen, are liable to and do frequently, from necessity or by accident, emit sparks and fire capable of igniting dry rubbish or combustible matter along their pathway, and thus place the property of adjoining owners in imminent danger of destructive conflagrations and frequently cause the destruction of such property.

"A railroad company may be supplied with the best engines and most approved apparatus for preventing the emission of sparks, and operated by the most skillful engineers; it may do all that skill and science can suggest in the management of its locomotives; and still it may be guilty of gross negligence in allowing the accumulation of dangerous combustible along the track, easily to be ignited by its furnaces and thence communicated to the property of adjoining

owners." (*Medley* v. *Richmond and Danville R. R. Co.*, 7 Am. & Eng. R. R. Cases, 493; 75 Va. Rep. 498.)

"The general rule is that a railroad company must keep its track and right of way reasonably clear of all such substances as are liable to be ignited by sparks or cinders from its engines." (*Eddy et al.* v. *Lafayette et al.*, 49 Fed. Rep. 807; 8 Am. & Eng. Ency. 14; *Kellogg* v. *Chicago R. R. Co.*, 26 Wis. 223; *Jones* v. *Mich. Cent. R. R.*, 59 Mich. 437; *Black* v. *Railroad*, 115 N. C. 667.) "A railroad company must be diligent in keeping its track clear of such combustible matter as is liable to be easily ignited." (*Longabaugh Case, supra.*)

*What Caused the Fire?* We are of opinion that the evidence reasonably supports the finding that it was caused by fire from the defendant's engine. The testimony of the plaintiff is to the effect that, in passing up and down the railroad, he frequently saw trains pass and within an hour or so thereafter had seen the sagebrush and dry grass on fire, and he had seen fires started immediately after the train had passed; that he saw it thus in September, about a month before the fire in question; that he frequently saw ties burnt in the center along the track; that he saw coals scattered along the railroad, etc. Watt, Jr., testified to the same effect and that he was at the fire on the Watt ranch in about two hours after the train had passed; that he went to where the fire started and investigated it; that in his opinion the fire started right along the railroad track; that he could see coals on the edges of the rails in many places; that the wind was blowing from the railroad towards the stacks of hay; that the fire widened from the track across the meadow to the stacks; that in his opinion the engine set the fire, and nothing else.

Fred Steiner, whose ranch adjoins the plaintiff's ranch, testified, in effect, that he had seen many fires kindled by passing engines ever since the road was built; that he and his family always kept watch for fires when the trains passed his place, and had put out many fires set by the engines; that in the latter part of September, a short time before the Watt fire, the engine (No. 1) set six fires on his ranch in passing along a distance of a mile or a mile and a half.

O'Donald testified that in December, after the fire at

Watt's ranch, he put out two fires that had been set by the engine on this ranch, near the track and near the place where the fire occurred in on the 11th day of October, before.

Walter Davis testified, in substance, that he was engineer on this road for about two years and a half, and up to February, 1893; that he ran engines No. 1 and No. 5 from the start, then No. 1 and No. 2; that he frequently set fires by these engines along the road; that he had set as many as twelve to fifteen in a trip; that about two years ago he set fire to Watts' meadow, where the late fire occurred.

We are of opinion that the evidence affords reasonable presumption and inference that the defendant's engine was the agent that set the fire that destroyed the plaintiff's property, especially in the absence of evidence tending to point to any other agency or probable agency. In *Gibbons* v. *Wisconsin Valley Ry. Co.*, 25 Am. & Eng. R. R. Cases, 479, the circumstances and evidence tending to show the origin of a fire are very much like these of the present case, and the court held that they were sufficient to justify the finding of the jury that the fire was set by the locomotive.

*The Number of Tons of Hay:* The court found that the number of tons of hay destroyed was 976. There were several modes adopted on the part of plaintiff at the trial in arriving at the estimated amount of hay.

First: The plaintiff testified, substantially, that he should think he stacked in 1890, 250 tons; that in 1891 he thought he stacked in the neighborhood of the same amount; that in 1892 he thought it was over 300 tons, or in that neighborhood; in 1893 he thought perhaps he stacked in the neighborhood of 200 tons; that he did not take any measurements only from observation; that he did not handle the business himself; that he might have been there, off and on, while the hay was being put up, but never stayed any length of time.

Second: That he should judge that there were some 150 to 175 acres of hay land, somewhere along there; that he never measured it; that in a good year he thought "you could get two tons or over" of hay to the acre; that in 1891 and 1893 the crops were not so good as in 1890 and 1892; that two tons would be a fair average yield. Watt, Jr., who

harvested the hay each of the four years, estimated the number of acres of hay land at 150 to 165, and the yield per acre at $1\frac{3}{4}$ to 2 tons.

Third: Estimates were made by Watt, Jr., from his recollection of the number of loads of hay hauled and stacked each year of the four years and from the estimated weight of each load as guessed at by him and the boys who helped in the harvesting.

Fourth: Watt, Jr., testified to the measurements he made of the length and width of the burned ground where the several stacks had been standing, and to his estimate of the height of each stack; that he estimated that the stacks "would each square 16 feet high," and from these measurements and estimated heights he calculated 976 tons. Dennis Scully, a surveyor, measured the height of the two stacks of Fred Steiner on an adjoining ranch, and found one to be $10\frac{1}{2}$ feet and the other 11 feet. Fred Steiner testified that he had taken notice of Watt's stacks a short time before they were burned; that a part of them probably was as high as his, but that he did not think they would average as high as his. Watt, Jr., testified that he was quite familiar with Steiner's stacks; that he thought some of Watt's were a little higher than Steiner's; but that they were "about the same, just about the same." And yet his calculation is based partly on 16 feet as the height of the Watt stacks, although the accuracy of Scully's measurements of the Steiner stacks was not questioned at the trial or in this court. If the Scully measurements of these stacks and the observations of Steiner and Watt, Jr., as to the relative height of the two sets of stacks can be relied on as being approximately correct, then the calculation of 976 tons, based on the measurement of the burnt ground where the stacks stood, and the estimated height of the stacks, 16 feet, gives a result too much by $\frac{5}{16}$ of 976, or by 305 tons. There is nothing in the record by which it may be inferred that either the plaintiff or Watt, Jr., had any particular object in wishing to know the number of tons they put up each year, until after the hay was destroyed, or that they had, or retained in mind, very reliable data on which to base their several calculations, and it could not be expected that their conclusions under such circum-

stances would be very accurate. Certain of their estimates, when tested by actual survey and measurements, are found to be very wild. Taking all the testimony given, and estimates made, on the part of the plaintiff, they would, doubtless, be sufficient to support the finding of 976 tons of hay as against other evidence of similar character and of no greater degree of certainty. But Dennis Scully made a survey of the meadow land for the defendant, and, when he was put on the witness stand, counsel for the plaintiff stated to the opposing counsel and to the court as follows: "Without going into an extensive examination, I will admit right here that Mr. Scully is a first-rate surveyor and a faithful man." Mr. Scully produced a plat of his survey of "the hay land on Watt's Reese river ranch," and briefly testified in explanation thereof and to its correctness. No suggestion was made that the survey as to the contents of the hay land was not correct, until it came to the argument of the case by briefs. Then counsel for plaintiff in the court below, and in argument in this court, claimed that Mr. Scully did not know the boundaries of the meadow except as they were pointed out to him by Mr. Cox and Mr. Murdock, and that there is no evidence that these lines were correctly pointed out to him. But in this contention we cannot agree with plaintiff's counsel. It is clear from the testimony of Mr. Scully that what were pointed out to him were the several designated places marked on the plat, to wit: "Fire first discovered," and "Boundary line of fire," and "End of hay stacks," which are no part of the survey of the contents of the meadow land. Besides, we are of opinion that a competent surveyor and reliable man could have no great difficulty in finding and tracing the boundaries of a tract of hay land that produces two tons of red-top hay to the acre. Mr. Scully found by his survey that the meadow or hay land contained 91.2 acres. The evidence of Mr. Watt and Watt, Jr., shows, and the court found, that of the hay land four acres were never cut. This leaves 87.2 acres from which the plaintiff's hay was harvested. Taking the 87.2 acres as a basis in connection with two tons of hay to the acre as the annual product, which the plaintiff testified would be a fair average yield, and which was corroborated by Watt, Jr., and

a nearer approach may be had and a more reliable result be obtained as to the actual number of tons destroyed than by any of the uncertain methods adopted by the plaintiff at the trial.

Notwithstanding the well-established rule which has been so often announced by this and other courts that, "where there is a substantial conflict in the evidence the appellate court will not disturb the decision of the court below," there is another rule as well established and of as binding force, both in actions at law and in equity, addressed to the conscience and judgment of the court of last resort, which cannot be ignored without doing violence to the plain principles of common justice in many cases, to wit: "If there be no substantial conflict in the evidence upon any material point and the verdict or decision be against such evidence upon such point, or where the verdict or decision strikes the mind, at first blush, as manifestly and palpably contrary to the evidence, the supreme court will direct a new trial." (Hayne, New Trial and Appeal, sec. 288, and citations; *Barnes* v. *Sabron*, 10 Nev. 217.)

The duty of the supreme court to look into the evidence and grant a new trial "in cases where it appears that the evidence taken all together does not support the verdict or decision or judgment of the court," is made clear by Stats. 1893, p. 88, as authoritatively construed in *Beck* v. *Thompson*, 22 Nev. 121. In that case the court, while recognizing the rule applicable in case of conflict of evidence as given above, said: "As already remarked, this statute (1893) has worked an important and quite radical change, and in a proper case, without regard to whether there are or are not findings, seems to impose upon this court the duty of reviewing the evidence, and determining whether the final result is supported by it. This statute was undoubtedly designed to cut through many technicalities that have so often prevented cases from being considered upon their merits, and should be construed in the same broad spirit in which it was enacted, but at the same time with such conservatism as will not result in the reversal of a case where substantial justice has been done. * * * Where there is a substantial conflict in the testimony, the appellate court should undoubtedly

not substitute its judgment for that of the trial court, and should only interfere where, upon all the evidence, it is clear that a wrong conclusion has been reached."

We are of opinion that the uncertain estimates and calculations made on the part of the plaintiff to ascertain the quantity of hay destroyed, on which the finding of the court was based, cannot be considered as reaching the rank of conflicting evidence with the actual number of acres of hay land, as ascertained by a reliable survey of the ground, and the fair average yield of two tons per acre, as admitted by the plaintiff. A sense of justice impels us to hold that the evidence given at the trial is insufficient to support the finding of 976 tons, or of any greater number than 697.6 tons, and we are satisfied that the latter number is a very liberal allowance in favor of the plaintiff.

*The Value of the Hay:* The court found that the value of the hay destroyed was $10 per ton, and assessed the damages for its destruction at that sum. That the value of the hay at the time and place when and where it was destroyed is the criterion of damages in this case is not disputed by the parties, but there is a radical difference between them as to what that value was, and as to the rules to be adopted in arriving at the value. It is claimed by plaintiff's counsel that "the value of a thing is that which it takes to replace the thing at the time and place when and where it was to be delivered, or where and when it was taken or destroyed; that the value of the hay in question was the sum of money that it would have required to replace the same quantity and quality of hay in stack on the plaintiff's ranch"; and, therefore, that "the plaintiff is entitled to recover the value in the nearest market and the cost of transportation to his ranch with other necessary expenses to replace the hay." He cites several authorities to sustain his contention. The counsel for defendant denies the correctness of these propositions as applied to this case and also cites several authorities.

Doubtless, the rules adopted in the respective cases cited by plaintiff's counsel were applicable to the facts and circumstances of those cases, but we fail to see their applicability to the state of facts of the present case.

Evidence of the cost of an article may be an element of proof to be considered in arriving at its value.  In the case at bar, if the cost of producing the hay had been shown, it would have been proper for the court to have considered it as evidence tending to show value; and if there were no other facts incident to the condition of things involved calculated to affect the question of value, or which would outweigh such cost in arriving at a valuation, the court might have properly fixed the value at such cost.  The cost of an article may be inconsiderable, and yet its value great; and its value may be trivial, and its cost great. · Because the cost of substituting property is a certain sum, it does not necessarily follow that the value of the new property is the same sum, nor that the value of the original property is the cost of substituting other like property in its place.

How the cost of substitution of other property can add to or detract from the value of the property for which the substitution is made, we are unable to perceive.

It is well settled that the cost of replacing other property for property destroyed is not the criterion of damages, but it is the actual value of the property at the time and place it was destroyed.  (*Burke* v. *Louisville, etc.*, 7 Heisk. 451; 17 L. A. R. 60; *Wylie* v. *Smitherman*, 7 Ired. 236; 1 Suth., 2d ed., 12, 105; Sedg., 40, 428.)

But " where the value of the property destroyed is the criterion of the amount of damages to be awarded, and the property had no market value at the place of its destruction, then all such pertinent facts and circumstances as tend to establish its real and ordinary value at the time of destruction are admissible in evidence; such facts as will furnish the jury or court with such pertinent data as will enable them reasonably and intelligently to arrive at a fair valuation, and are all elements of proof to be considered by them." (*Jacksonville, Tampa and Key West Railway Company* v. *Peninsular Land, Transportation and Manufacturing Company*, 27 Fla. 1; 17 L. R. A. 33.)

" If the article in question has no market value, its value may be shown by proof of such elements or facts affecting the question as exist.  Recourse may be had to the items of cost, utility and use." (Suth., 654, 378.)  If the property

of which the owner is deprived is a marketable commodity, its market price is the value he is entitled to recover. (Sedg., 433; *Sullivan* v. *Linn*, 23 Fla. 473; Suth., 1098.) The market value will govern rather than any special value to the owner. (Suth., 1113; *Brown* v. *Allen*, 35 Iowa, 306.)

In this case the value of the hay destroyed is the criterion of damages, and there was no market at the ranch where it was destroyed. The hay was produced on the plaintiff's land. The plaintiff testified to the effect that he stored the hay in stack each of the four preceding years in order to have it in case of a recurrence of a severe winter, such as was experienced in 1889–90, in which he lost $100,000 worth of stock, of which he could have saved $50,000 worth if he had had on hand the hay in question; that he intended to continue to store hay for that purpose for an indefinite number of years; that if a hard winter did not come in ten years he would have ten years' accumulation of hay on hand; that if the·hay had not been destroyed he would have continued to keep it till a hard winter did come; that he had no other use for it whatever; that if a hard winter did not come he might be compelled to use it, or some of it, at some time in the indefinite future, on account of the increase of his stock; that this was a possibility, as his stock was increasing rapidly; that he had not used any of the hay, and had no need to use it since he commenced storing it in 1890, which was four years before.

According to the plaintiff's own showing it is manifest that the hay had no value for present use as feed for his stock. What facts or circumstances are there disclosed that would furnish such pertinent data to a court or jury as would enable them reasonably and intelligently to arrive at a fair valuation for future use as feed for his stock? If there be any element of proof of value for such future use, it is so hedged about with simple conjecture, uncertainty and speculation, and so environed with matters problematic, as to be incapable of making an intelligent impression upon the common judgment as to what that value would be.

. "There must be proof of value or evidence of such facts as will warrant a deduction of the value with reasonable certainty. Neither courts nor juries are permitted to assess

values on conjecture. Value must be ascertained by a money standard and based on evidence, not on conjecture." (*Traloff* v. *New York Central*, 10 Blachf. 16; Sedg., 172.) Compensation cannot be based on mere conjectural probability of future loss. (*Chicago Ry. Co.* v. *Henry*, 142 Sedg. 244.) Prospective damages are allowed only on proof that they are reasonably certain to occur. (*Clarke* v. *The Nevada L. & M. Co.*, 6 Nev. 203.)

Where a plaintiff claims compensation for consequences of an injury which he has not yet experienced, he must prove with reasonable certainty that such consequences are to happen. (*DeCosta* v. *Mass. M. Co.*, 17 Cal. 613; *Fry* v. *Dubuque Ry. Co.*, 45 Iowa, 416; *Lincoln* v. *Saratoga R. R. Co.*, 23 Wend. 425; 6 Nev. *supra*.)

It is evident that the plaintiff in this case has sustained no damages, as yet, by reason of the destruction of his hay, beyond the value of the hay in the market. To allow him other damages would be giving him compensation for conjectural consequences, which is not allowable. (Sedg., 888, 937.) It would be compensation for conjectural consequences based on conjectural value. As the hay had no value for present use, and no ascertainable value for future use, as feed for plaintiff's stock, its value was no more and no less than if it had been the property of A., raised and stored at the same place, A. having no stock.

That the market at Austin must be looked to for a solution of the question of the value of the hay, we understand, the counsel are agreed. At Austin, 37 miles distant by rail, there was a market for baled hay. The plaintiff's counsel, however, claims that the cost of transportation of the hay from Austin to the plaintiff's ranch, and other expenses such as unbaling and stacking it, should be added to the Austin market price in assessing the damages, while the defendant's counsel maintains that the cost of baling to put it into marketable shape, and the cost of transportation from the ranch to Austin, must be deducted from the market value at Austin. The contention of plaintiff's counsel is based on the theory that the plaintiff did not want to sell the hay, but wanted to keep it for his own use, but it appears that he did not want to purchase hay either to keep for his own use in

the place of the hay destroyed, for he made no effort to do so, evidently for the reason that the cost would have greatly exceeded the value of the hay. If the plaintiff can recover the cost of buying and replacing other hay on his ranch, it is evident that he would recover a sum greatly in excess of his loss, and that the fire would be the source of great profit, instead of being the cause of loss. It seems clear that the plaintiff has sustained no loss beyond the value of the hay in the market as a commodity for sale. And that value was the market price, less the cost of putting into market. A sense of common justice constrains us to hold that the evidence insufficient to sustain the finding that the value of the hay destroyed was $10 per ton.

The plaintiff based his testimoney of the value of the hay on the alleged facts, substantially, that he had stored it for future use in the event of a hard winter; that it would cost at least $20 per ton to replace it with other hay; that it was worth $20 per ton to him; that he would not have taken less for it; that it was not for sale, and that it was worth more than river hay such as was sold in the Austin market. But "it is quite immaterial what use he would have made of the hay in the future. The measure of damages is the market value." (*Berry* v. *Dwinel,* 44 Me. 255; *Washington Ice Co.* v. *Webster,* 68 Me. 451; *Stevens* v. *Springer,* 23 Mo. App. 375; *Smith* v. *Griffin,* 3 Hill, 333.) "What the owner would take for his property cannot be shown as proof of its value." (Sedg., 1294; *Kiernan* v. *Chicago Ry. Co.,* 123 Ill. 188.)

"The price at which property would sell under special and extraordinary circumstances is not to be considered, but its fair cash market value if sold in the market under ordinary circumstances, and assuming that the owner is willing to sell and the purchaser is willing to buy." (*Brown* v. *Calumet R. R. Co.,* 125 Ill. 606.) "In an action against a railroad company to recover damages for hay destroyed by fire set by defendant's locomotive, the measure of damages is the market value of the hay where burned. In case there is no local market, the value is properly fixed by the value at the nearest market, deducting the cost of transportation." (*Lafayette* v. *Eddy et al., Trustees Mo. Kan. & Tex. Ry. Co.,* 49 Fed. Rep. 807.)

As there is testimony tending to show that the hay destroyed was of better quality than the river hay sold in the Austin market, this evidence should be considered, in connection with the Austin market for river hay, in arriving at the value of the plaintiff's hay. This hay was a marketable commodity, and therefore its market value at the time it was destroyed is the measure of damages. If there was no market for it where it stood, there was one at Austin, which was within reach, and to which hay had sometimes been shipped from this section. In the absence of a showing that it had any greater market value where it was situated, its value in the Austin market, less the cost of transportation, must control.

*The Hay Press:* The value of the hay press was fixed by the finding at $200, the sum alleged in the complaint. We do not think this finding is supported by the evidence. We find no evidence in the record tending to show any greater value of the press than its cost at plaintiff's ranch.

The judgment and order appealed from are reversed and new trial granted.

#### ON PETITION FOR REHEARING.

By the Court, BONNIFIELD. J.:

The plaintiff has petitioned for rehearing " on the ground that it is probable that the court in its decision has arrived at an erroneous conclusion and overlooked important questions which were necessary to be considered in order to arrive at a full and proper understanding of the case; and on the ground that petitioner verily believes that the court upon such rehearing will come to different conclusions from those announced in its former decision."

Counsel argues at great length that the court erred in its conclusions on all points wherein the decision was adverse to plaintiff's contention. The matter of the quantity of hay destroyed we will not further consider, but briefly notice counsel's contention as to measure of the value of the hay.

The case is reported in 44 Pac. Rep. 423, in which, after thorough and deliberate consideration, we held that: "In the absence of a showing that it had any greater market

value where it was situated, its value in the Austin market, less the cost of transportation, must control."

The plaintiff tried the case in the court below upon the theory, and his counsel contended there and on appeal, and now contends in his petition, that, as the plaintiff had harvested and stored the hay for use in the event of the occurrence of a hard winter like that of 1889–90, in which he lost $100,000 worth of stock, and could have saved $50,000 worth with the amount of hay defendant destroyed, the true measure of the value of the hay is such a sum of money as it would require to place on plaintiff's ranch the same quantity and quality of hay as that destroyed. He claimed on appeal from the evidence that no hay of the same quality as that destroyed could be procured at any place nearer than Carson valley. There is no evidence in the record of what the cost would have been to have bought and shipped hay from that place to replace the hay destroyed. He argued that, taking Austin as the supply point, there must be added to the Austin market price the cost of transportation from Austin to plaintiff's ranch, and the difference between the value of the plaintiff's red-top hay and the common river hay sold at Austin, and thus he figures the value of the hay destroyed at $32 50 per ton.

While we may admit that the sum of $32 50 per ton is a correct result of his theory, there is no ingenuity of argument, however learnedly and lengthily it may be presented, that can cover up from the ordinary mind the fallacy of the theory as applied to the facts and circumstances of this case. The fact that the plaintiff only claimed $15 per ton in his complaint or was allowed only $10, or now claims only the latter sum, does not relieve his theory of its fallaciousness as a guide in arriving at the value of $10, or any other sum, per ton.

If the value of the destroyed hay is to be based on what the value of like quantity and quality would be for use in the contingency of such a winter as plaintiff claims, then $50,000 would not be an unreasonable valuation for it.

He testified and his counsel argues that he could have saved $50,000 worth of stock in the hard winter named with the amount of hay the defendant destroyed. If that be so

it is as probable that such amount and quality of hay would be worth that sum in the event of such another winter as that such winter will again occur.  But as neither history nor tradition furnishes any evidence of the occurrence in the past of such another winter as that of 1889–90 within the borders of this state outside of the Sierra Nevada mountains, we are of opinion that such contingent value is not the criterion by which it is to be determined what the plaintiff's ·hay was worth in 1893.

Counsel informs us "that for the purpose of providing against future deep snows the stock farmers commenced in 1889–90, and continued every year since, to store up all .the hay they could for such purpose."  But we are not so informed by the record, or otherwise, except as to the plaintiff.  If the theory or contention be true that red-top hay is worth $32 50 per ton for the purpose of storing for use in the event of the coming of a winter like that of 1889-90, and the farmers find it out, there ought to be great revival in the hay business.  That the value of the hay destroyed was not $50,000 in the aggregate, or even $32 50 per ton, we think counsel will not deny; if not, he must admit that any theory of which either sum is the logical result as to the value must be erroneous, and should be discarded in this case.

Petitioner asks the court, in the event· of its adhering to its conclusions heretofore arrived at, to terminate this litigation by ordering such judgment as it deems proper with ·the usual alternative that the plaintiff accept it or suffer a new trial.   In view of the necessary costs and expenses to which the parties would be subjected by a new trial, we are inclined to grant the request.

Mr. Van Patton, defendant's witness and engaged in the livery business at Austin, testified that the market value of hay in bale in Austin was $12 per ton in the fall of 1893. Other witnesses gave the value at $10 to $12.   Exhibit 6 in evidence, being a schedule of railroad freight rates, gives the rate of $3 per ton for hay from " Canyon and Vaughn's and points between to Austin."   Walter's, or plaintiff's ranch, is between Canyon and Vaughn's.   There is no siding at Walter's, hence hay at plaintiff's ranch would have to ·be hauled by wagon to Canyon or Vaughn's, where there are

sidings, for shipment by rail to Austin. Canyon is the nearest station and distant three or four miles from plaintiff's ranch, or Walter's station.

We find no evidence as to the cost of hauling hay from Walter's to either siding, but plaintiff's counsel in his brief put it at $1 per ton from the siding to the ranch. So we will consider $1 per ton reasonable cost for hauling from the ranch to the siding where it could have been loaded on the cars. It is in evidence that the rate for hauling general merchandise from the Austin depot into town is $2 50 per ton, and that the cost of baling hay was about $2 per ton. Taking the above items of cost as approximately correct for putting hay into the Austin market from plaintiff's ranch the total cost would be $8 50 per ton. As there is evidence tending to show that the plaintiff's hay was worth more than the common river hay sold in Austin, we are of opinion that it is reasonable to conclude that his hay was worth the highest market price, $12 per ton.

We are of the opinion that the evidence would sustain a finding of a net market value of $3 50 per ton, and no more. The evidence is that the hay press cost $80 in Caleco, Lake valley, and the value of the labor in hauling it to his ranch the plaintiff puts at $25 or $30. We are of opinion that the evidence would support a finding of $110 as the value of the press, and no more. The $100 damages assessed for injury to the meadow land we think the evidence justifies.

We are of opinion that the plaintiff is entitled, under the evidence and the law applicable to the case, to a judgment for the value of 697.6 tons of hay, at $3 50 a ton; for the value of the hay press, $110, and for damages to the meadow land $100, amounting to $2,651 60, with legal interest from date of original judgment, besides the cost of suit, taxed at $1,289 70 in court below.

The judgment of this court herein is modified so as to read as follows:

It is therefore ordered that the plaintiff have twenty days from the filing hereof to file in this court a release of all damages claimed in this action, except the sum of $2,651 60, with legal interest thereon from April 10, 1895, till paid, and

that upon filing such release in due form within said twenty days, the judgment of the trial court be affirmed in said sum of $2,651 60, with interest as aforesaid, and costs of the court below in the sum of $1,289 70; but in default of filing such release that the judgment of the district court and the order denying a new trial be reversed and a new trial granted. And it is further ordered that appellant recover its costs on appeal.

Ordered, that the remittitur be stayed fifteen days to give appellant time to petition for rehearing if it desires to do so.

### ON PETITION FOR REHEARING.

By the Court, BONNIFIELD, J.:

The appellant has petitioned for a rehearing in so far as the judgment of the court below was affirmed in the sum of $2,651 60 (45 Pac. Rep.), claiming that said sum is too much by $896 25.

Counsel say: "The court below made its findings on the question of costs of transportation from Watt's ranch to Austin, exclusive of the cost of baling as follows: 'The cost of transportation from Watt's ranch to Austin was not less than $8 dollars per ton, and the cost of transportation from Austin to Watt's ranch was not less than $8 per ton, and the market value of baled hay at Austin at about the time of the burning of plaintiff's hay was $10 to $12 per ton.'"

Counsel further say: . "This finding has not been questioned as to its correctness, either by plaintiff or defendant. It has not been assigned as error, nor has this finding been specified by counsel for defendant as unsupported by the evidence. It has not been assailed in any way by either side and is therefore binding, under the authorities, and upon sound reason, upon this court for all purposes of the case. Whether it be invoked for the purpose of reversing the judgment, or relied upon in case a modification of the judgment shall be determined upon by this court, it is absolutely binding on the court and litigant, because it has not been pointed out as not supported by the evidence, nor assailed as a finding of fact in any way."

We, however, find among the errors as assigned by appellant's counsel in the statement on motion for new trial, the following alleged error: " That each and every part of each and every finding of fact by the court is wholly unsupported by the evidence and against the evidence."

. We also find that the appellant's notice of motion for new trial designates, as one of the grounds, " the insufficiency of the evidence to justify the decision of the court."

Our statute (1893, p. 89) with reference to motions for new trials, among other things, provides: " When the notice designates, as the ground upon which the motion will be made, the insufficiency of the evidence to justify the verdict or other decision, it shall be sufficient assignment of error to specify that the verdict of the jury, or the decision, or judgment, or decree of the court, is not supported by the evidence or is contrary to the evidence. In such case where it appears that the evidence, taken altogether, does not support the verdict, or decision, or judgment, or decree of the court, a new trial shall be granted or, upon appeal, the case shall be reversed without regard to whether there are express findings upon all the issues, or whether the specifications particularly point out the finding or findings, either express or implied, that are not supported by the evidence or are contrary thereto."

: . Under the above facts and the statute, this court is not bound by the finding of the lower court with reference to the cost of transportation of the hay unless it finds that the evidence supports such finding. The force of this finding is no greater than any other finding of fact in the case, but is exactly the same.

: The petition for rehearing is denied.