**Reginald GEORGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42454.**

Court of Criminal Appeals of Texas.

Dec. 17, 1969.

Rehearing Denied Feb. 18, 1970.

---

H. M. Bellinger, San Antonio, for appellant.

James E. Barlow, Dist. Atty., and Sparta Bitsis, Asst. Dist. Atty., San Antonio, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for robbery by assault with firearms; the punishment, twenty years.

The appellant, in his first two grounds of error, challenges the sufficiency of the evidence.

The testimony of the state reveals that on December 23, Franklin W. James was the owner and operator of an Ice House at the corner of Blanco Road and Dresden Street in San Antonio. While testifying, James identified Robert George, the appellant's brother, as the person who, by exhibiting a rifle, robbed him of his money at the Ice House about 11:10 p. m., December 23. James immediately notified the police of the robbery and gave them a description of the robber and the get-away vehicle. Jack Murphy and Eddie Brangdon, who drove off of Dresden Street to the store, saw Robert George run from the Ice House carrying a rifle and get into the passenger side of a green Volkswagen which was parked on Dresden and, "He (Robert) was getting into the Volkswagen bus as it was taking off," but they did not see who drove it away.

Officer Jordon testified that he received a radio dispatch at 11:11 p. m., reporting the robbery at the Ice House and giving a description of the robber and the car; that as he was travelling north on West Avenue, which is ten blocks west of the Ice House, he saw, at the intersection of West Avenue and Nassau, a Volkswagen travelling south (away from the robbery scene), and he turned and followed it about eight blocks, using the red lights on his car, until the Volkswagen stopped at 11:26 p. m., in the parking area at Jay's Lounge; the appellant was driving the Volkswagen and Robert was on the passenger side; Robert was wearing dark pants and a short sleeved checkered shirt; and the weather was 42 degrees.

Officer Finley testified that in response to a radio dispatch at 11:11 p. m., he went to the Ice House, talked with the owner James, and then with Murphy and Brangdon, went to Jay's Lounge where they saw a green Volkswagen on a parking lot and also saw the appellant and Robert George, and that appellant was wearing a short sleeved, multicolored, checkered shirt; that he found a rifle wrapped in a black coat with a white shirt and a black bow tie in a recessed compartment inside and at the rear of the Volkswagen.

In approximately twenty minutes after the robbery, the officers returned Reginald and Robert George and the Volkswagen to the Ice House where the owner James identified Robert George as the person who

had robbed him with a rifle, but he did not identify the appellant. James testified that Robert George was wearing black pants, a black coat, a small tie and a white shirt and carrying a rifle at the time of the robbery; and on Robert's return to the Ice House he was wearing a short sleeved checkered shirt and, "I think he had the same trousers on; dark trousers," and no coat; and that the .22 caliber rifle exhibited to him was the rifle used in the robbery. James also identified the white shirt, the coat and black bow tie which were found in the Volkswagen and exhibited to him at the trial as those Robert was wearing during the robbery. The witnesses, Murphy and Brangdon, testified that in a brief time after the robbery they saw, parked at Jay's Lounge, the green Volkswagen which they had seen a man enter after running from the Ice House carrying a rifle.

The appellant testified in his own behalf and called Mrs. Adeline Fike, with whom he had been living for about one year, to support his plea of alibi. Robert was also living there at the time of the robbery. They testified that Mrs. Fike owned the Volkswagen here in question which she had loaned to Robert, and he had left her house in it about dark on December 23; that they were watching television when Robert drove into her driveway about 11:15 or 11:20 p. m.; at that time appellant went outside to get Robert to drive him to get some beer. When appellant got outside, Robert handed him the keys to the Volkswagen. The appellant then drove away going to Jay's Lounge on West Avenue. As appellant was getting out of the car on the driver's side while Robert was on the passenger side at Jay's Lounge, the police car drove up. While testifying, the appellant and Mrs. Fike identified the rifle which had been introduced in evidence as belonging to Mrs. Fike and which she kept in her bedroom closet in her home. Mrs. Fike testified that she did not know the rifle had been taken from the closet.

To impeach the testimony given on cross-examination by Mrs. Fike, the state intro- duced a written statement made by her to an investigator for the district attorney's office. The statement in part recites:

"Robert and Reginald George left my home about 8:30 PM on the evening of December 23, 1967. They were rooming at my home and we had developed a friendship, accordingly they were free to use my VW bus when they wished. On the evening of 23 Dec 1967, they departed the house in my V.W. Bus. I did not know where they were going or what they planned to do.

\* \* \* \* \* \*

"I was unaware that either Robert or Reginal__ knew that there was a gun in my closet. I was unaware that they had taken the gun.

"The first I knew about the incident was when Regional called me and told me he and Robert were in jail. This was about 4:00 AM 24 December '67. He didn't say why they were in jail but wanted me to come and get them out. Later Regional told me that he remained at a beer joint while Robert took his girl friend home. That Robert had pulled a hi jacking while enroute back to the bar. Regional denied that he had anything to do with the hi jacking."

To summarize: It is evident that Robert George, the appellant's brother, left Mrs. Fike's house in her Volkswagen about dark; that the Volkswagen was not driven away from the Ice House by Robert; that the appellant was driving the Volkswagen fifteen minutes later after it had been seen by an officer ten blocks from the Ice House and was then followed eight blocks by the officer to Jay's Lounge where it stopped; that during the fifteen minutes and the distance travelled, Robert had changed from his black coat, white shirt and bow tie to a short sleeved checkered shirt while the weather was 42 degrees, and the shirt, tie and the rifle were found wrapped in the black coat in a recessed compartment inside and at the rear of the Volkswagen.

The court charged the jury upon the law of principals and circumstantial evidence. The court also charged on alibi, which the jury rejected.

From all the facts and circumstances in evidence, it is concluded that the appellant is guilty of acting as a principal in the commission of the alleged robbery, and the evidence supports the verdict of the jury.

The third ground of error is that the jury returned two verdicts, one for robbery by assault and the other for robbery with firearms. When this was discovered, the jury had not been discharged, and the court delivered the two verdicts to them and directed their return to the deliberation room. They later returned a verdict finding the appellant guilty of robbery with firearms which was accepted. This ground of error is overruled.

The fourth ground of error complains of the jury foreman taking a newspaper into the jury room. The trial court, after hearing this matter on the motion for new trial as reflected by the record, did not abuse his discretion in refusing the motion. The fourth ground is overruled.

The judgment is affirmed.