**JOHN PRICE ASSOCIATES, INC., a Utah corporation, Plaintiff-Appellee,**

v.

**WARNER ELECTRIC, INC., a California corporation, Defendant-Appellant.**

**No. 82–1593.**

United States Court of Appeals, Tenth Circuit.

Dec. 19, 1983.

George A. Hunt and Mark A. Larsen of Snow, Christensen & Martineau, Salt Lake City, Utah, for plaintiff-appellee.

Ellen Maycock of Kruse, Landa, Hansen & Maycock, Salt Lake City, Utah, for defendant-appellant.

Before SETH, Chief Judge, and LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

This three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Defendant Warner Electric, Inc. appeals from a judgment of the district court in favor of plaintiff John Price Associates, Inc. After a trial to the court, the district court awarded damages of $94,845.00 plus interest to Price for Warner's failure to perform the electrical work on a government building project for which Price was the general contractor. The award is the difference

between the subcontractor bid that Warner submitted and the bid of the subcontractor that did the work after Warner refused to perform.

Warner submitted a bid to the Utah Subcontractors Bid Depository Service for the electrical subcontract on the construction of the United States General Services Administration Metallurgy Research Center in Salt Lake City, Utah. Warner based its bid on specifications and bid forms supplied by the General Services Administration (GSA). Price used Warner's subcontract bid, which was the lowest submitted, in preparing its bid for the general contract. When the GSA notified Price that it was the apparent low bidder, Price informed Warner of that fact and of the fact that it had used Warner's bid. Based on information Warner provided to the GSA, the GSA approved Warner as the electrical subcontractor for the project.

A few days after Price signed a contract to complete the GSA project, Warner notified Price that it had a problem with its subcontract bid. Representatives of Warner, Price, the GSA, and the architects for the project met to discuss the problem. Warner said that it had not included in its bid a portion of the work in the plans—laboratory work described in section 11600—because it had thought that the work was not assigned to the electrical subcontractor. Warner also said that it would not sign a subcontract if it were required to do the section 11600 work without additional compensation. After the meeting Price notified Warner by mailgram that Price accepted Warner's bid. Later the same day, Warner's attorney delivered a letter to Price by hand declaring that Warner was withdrawing its bid because ambiguities in the project specifications and plans had caused Warner to omit some of the work from its bid.

After Warner withdrew its bid, Price contacted the other subcontractors who had submitted bids. On resubmittal the Howard P. Foley Company submitted the lowest bid, which was its original bid plus additional money for increased material costs and section 11600 work. Foley, like Warner, had not included the section 11600 work in its original bid. Foley completed the electrical work on the project.

Price later filed a claim with the GSA to recover the loss it had suffered from Warner's withdrawal of its bid, claiming, as Warner had, that the plans and specifications for the project were ambiguous. Price invited Warner to participate in the GSA proceedings and offered to reduce its claim against Warner by the amount of recovery. Warner did not participate. The contracting officer for the GSA denied Price's claim, and the GSA Board of Contract Appeals affirmed that denial. Price then brought this action against Warner.

The district court held that a contract existed between Price and Warner and also that promissory estoppel precluded Warner from withdrawing its bid. The court found that ambiguity of the plans and specifications was not a legal defense and that any mistake of fact was a unilateral mistake by Warner. The court refused to admit evidence of any ambiguity in the project plans and specifications in this case, saying that the issue was fully litigated before the GSA Board of Contract Appeals and that Warner was bound by that determination.

We need not address the propriety of the trial court's finding that a contract existed between Price and Warner, since we agree that the doctrine of promissory estoppel barred Warner from withdrawing its bid. That doctrine provides that a promise that the promisor should reasonably expect to induce action by the promisee and that does induce such action by the promisee is binding if injustice can be avoided only by enforcement of the promise. *Union Tank Car Co. v. Wheat Brothers,* 15 Utah 2d 101, 387 P.2d 1000, 1002–03 (1964); *Restatement (Second) of Contracts* § 90 (1981). Warner submitted a bid through the Utah Subcontractors Bid Service with the expectation that companies bidding on the general contract would rely on its bid in making their bids. Price relied on Warner's bid, and when Price found out that it would probably get the general contract, Price notified

Warner of its reliance. Warner provided information to the government that permitted its approval as a subcontractor on the project. Price had entered into a binding contract before Warner notified it of any problems with the bid. In this situation promissory estoppel should apply to prevent Warner from withdrawing its bid. *See Drennan v. Star Paving Co.,* 51 Cal.2d 409, 333 P.2d 757 (1958); *Restatement (Second) of Contracts* § 153 comment *d,* illustration 7 (1981).

 Warner contends, however, that the trial court erred in refusing to allow Warner to introduce any evidence that the government plans and specifications were ambiguous. Warner claims that since it was neither a party to nor in privity with Price in the Board of Contracts Appeals proceedings, collateral estoppel does not preclude relitigation of the ambiguity issue in the instant case. We conclude that Warner's collateral estoppel argument is irrelevant, however, because ambiguity in the government plans and specifications would not constitute a legal defense in the instant case. The government, not Price, provided the plans and specifications. The accompanying materials directed that inquiries about the plans and specifications be directed to government officials. The record shows no solicitation of Warner as a bidder by Price, no conferences between Price and Warner before the letting of the contract, and no conduct by Price that could be viewed as misleading to Warner. Nothing put Price on notice that something was wrong with Warner's bid. We agree with the trial court that the difference between Warner's bid and those of other electrical subcontractors was insufficient to raise Price's suspicion that Warner had made a mistake in computing its bid. Before Warner discovered its error Price was bound as general contractor on the project. Under these circumstances, the trial court correctly required Warner rather than Price to bear any loss caused by the alleged ambiguity. *See Restatement (Second) of Contracts* § 153 (1981).

When Warner withdrew its bid, Price, who was bound on the general contract, acted reasonably. Price contacted the four next lowest bidders, who were no longer bound by their original bids, and accepted the lowest bid on resubmittal. At this point the only other step Price could take to mitigate damages was to seek additional payments under the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601–613, because of the alleged ambiguities in the plans and specifications. Price pursued this remedy at its own expense through the Board of Contract Appeals. Even though it was unsuccessful it fairly carried out its duty to mitigate in seeking relief under the Contracts Disputes Act. We hold that the trial court properly awarded Price damages and interest.

AFFIRMED.