DYNALECTRIC COMPANY OF NEVADA, INC., A NEVADA CORPORATION, APPELLANT, v. CLARK & SULLIVAN CONSTRUCTORS, INC., RESPONDENT.

No. 51758

July 14, 2011                                    255 P.3d 286

---

[Rehearing denied October 5, 2011]

*Morris Peterson* and *Akke Levin* and *Steve Morris*, Las Vegas; *Holland & Hart, LLP*, and *Philip Dabney* and *Lars Evensen*, Las Vegas, for Appellant.

*McDonald Carano Wilson LLP* and *William A.S. Magrath, II*, and *Craig A. Newby*, Las Vegas, for Respondent.

Before DOUGLAS, C.J., CHERRY, SAITTA, GIBBONS, HARDESTY and PARRAGUIRRE, JJ.[1]

## OPINION

*Per Curiam:*

In this appeal, we address the measure of damages applicable to promissory estoppel claims. We adopt a flexible approach as suggested in the Restatement (Second) of Contracts and apply the same factors that bear on promissory estoppel relief to the remedy afforded by the breach. The determination of the appropriate measure of damages in any given case turns on considerations of what justice requires and the foreseeability and certainty of the particular damages award sought. We further conclude that the presumptive measure of damages for a general contractor that reasonably relies upon a subcontractor's unfulfilled promise is the difference between the nonperforming subcontractor's original bid and the cost of the replacement subcontractor's performance.

### FACTS AND PROCEDURAL HISTORY

This appeal arises from a dispute between appellant Dynalectric Company of Nevada, Inc., a subcontractor, and respondent Clark and Sullivan Constructors, Inc. (C&S), a general contactor, concerning a public works project (the Project). The Project involved the expansion of the University Medical Center (UMC) in Las Vegas. In 2004, UMC solicited bids for the Project. C&S, interested in serving as the general contractor for the Project, sought bids from subcontractors. Dynalectric submitted a bid to C&S to perform the electrical work for the Project and repeatedly assured C&S of the accuracy of its bid. C&S incorporated Dynalectric's bid into its bid to UMC for the general contract (Prime Contract). C&S was the low bidder, and UMC awarded it the Prime Contract. C&S notified Dynalectric. Subsequently, Dynalectric repudiated its obligations to C&S and refused to negotiate with C&S. C&S therefore contracted with three replacement subcontractors to complete the electrical work for the Project.

C&S then sued Dynalectric in district court under various theories of liability, including breach of contract, promissory estoppel, and breach of the covenant of good faith and fair dealing. Dy-

---

[1]THE HONORABLE KRISTINA PICKERING, Justice, voluntarily recused herself from participation in the decision of this matter.

nalectric countersued for, among other theories, breach of an implied contract, fraud, and violation of NRS 338.141.[2]

Following a 12-day bench trial, the district court entered a judgment for C&S on its promissory estoppel claim and rejected each of Dynalectric's counterclaims. The district court awarded C&S $2,501,615 in damages, which represents the difference between Dynalectric's bid ($7,808,983) and the amount C&S paid the three replacement contractors to complete the work ($10,310,598). Dynalectric appealed.

## DISCUSSION

Dynalectric contends that the district court applied the incorrect measure of damages.[3] Specifically, it asserts that the district court should not have awarded C&S expectation damages. We disagree.

### Standard of review

Whether a party is "entitled to a particular measure of damages is a question of law" reviewed de novo. *Toscano v. Greene Music*, 21 Cal. Rptr. 3d 732, 736 (Ct. App. 2004).

### Measure of damages for promissory estoppel claims

Broadly speaking, Nevada follows the doctrine of promissory estoppel articulated in the Restatement (Second) of Contracts. *See*

---

[2]NRS 338.141 is Nevada's anti-bid-shopping statute. It prohibits a general contractor from substituting a named subcontractor on a public works project before first providing the named subcontractor with a subcontract containing the same general terms offered to all other subcontractors on the project. NRS 338.141(5)(b)(1).

[3]Dynalectric also contends that the district court erred in (1) determining that C&S properly substituted Dynalectric in accordance with the requirements of NRS 338.141, (2) finding that C&S accepted Dynalectric's bid, (3) determining that C&S had proven its promissory estoppel claim, (4) determining that C&S did not have unclean hands, (5) determining that Dynalectric did not produce clear and convincing evidence that C&S committed fraud, (6) awarding C&S damages that were not supported by substantial and competent evidence, and (7) calculating prejudgment interest from the date the complaint and summons were filed rather than from the date C&S incurred its damages. After carefully reviewing the record, we conclude that substantial evidence supports the district court's finding that the subcontract that C&S offered to Dynalectric was in reasonable conformity with the subcontracts offered to the other subcontractors on the project and that the district court correctly determined that C&S did not abridge the proscription provided in NRS 338.141. We further conclude that the district court's remaining findings of fact were not clearly erroneous and were supported by substantial evidence and that its pertinent conclusions of law were correct. *See NOLM, LLC v. County of Clark*, 120 Nev. 736, 739, 100 P.3d 658, 660-61 (2004) (noting that we will not set aside the district court's findings of fact "unless they are clearly erroneous or not supported by substantial evidence" and that we review issues of law de novo (internal quotation omitted)).

*Vancheri v. GNLV Corp.*, 105 Nev. 417, 421, 777 P.2d 366, 369 (1989).

The Restatement describes promissory estoppel as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1) (1981).

Comment d elaborates further upon the remedies available for promissory estoppel:

> *A promise binding under this section is a contract, and full-scale enforcement by normal remedies is often appropriate.* But the same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. In particular, relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise.

*Id.* § 90 cmt. d (emphasis added).

Thus, under the Restatement, an award of expectation damages[4] is often an appropriate remedy for promissory estoppel claims. But, in other instances, reliance damages[5] or restitutionary damages[6] may be more suitable.

Following the lead of the Restatement, we hold that the district court may award expectation, reliance, or restitutionary damages for promissory estoppel claims.[7] Although the doctrine of promis-

---

[4]Expectation damages attempt to place the plaintiff in the position that he or she would have occupied if the contract had been performed or if the promise had been kept. *See* Restatement (Second) of Contracts § 344(a) (1981).

[5]Reliance damages attempt to restore the plaintiff to the position he or she would have occupied if the breached contract or promise had never been made. *See* Restatement (Second) of Contracts § 344(b) (1981).

[6]Restitutionary damages attempt to return the defendant to the position he or she would have occupied if the contract or promise had never been made. *See* Restatement (Second) of Contracts § 344(c) (1981).

[7]Additionally, when a damages award would be inadequate, specific performance or injunctive relief may be appropriate remedies. *See* Restatement (Second) of Contracts § 359 (1981) (noting that specific performance or an injunction may be appropriate when a damages award would be inadequate); *see also Skebba v. Kasch*, 724 N.W.2d 408, 413 (Wis. Ct. App. 2006) (specific performance may be warranted in promissory estoppel claims to prevent injustice).

sory estoppel is conceptually distinct from traditional contract principles, there is no rational reason " 'for distinguishing the two situations in terms of the *damages* that may be recovered.' " *Toscano*, 21 Cal. Rptr. 3d at 737 (quoting *Signal Hill Aviation Co., Inc. v. Stroppe*, 158 Cal. Rptr. 178, 185 (Ct. App. 1979)). In sum, no single measure of damages will apply to each and every promissory estoppel claim; instead, to determine the appropriate measure of damages for promissory estoppel claims, the district court should consider the measure of damages that justice requires and that comports with the Restatement's general requirements that damages be foreseeable and reasonably certain.[8] *See* Restatement (Second) of Contracts §§ 351, 352 (1981).

*Whether the district court used the appropriate measure of damages*

We now consider whether the district court used the appropriate measure of damages when it awarded C&S promissory estoppel damages representing the difference between Dynalectric's bid and the amount that the three replacement contractors charged C&S to complete the same work.

*Drennan v. Star Paving Company*, 333 P.2d 757, 761 (Cal. 1958), the seminal promissory estoppel case in the subcontract bidding context, illustrates how damages should typically be computed in this situation. In *Drennan*, a general contractor was preparing a bid for a construction project. *Id.* at 758. Before the general contractor submitted its bid, a subcontractor submitted a

---

[8]Most jurisdictions considering this issue hold, as we do today, that a flexible approach to promissory estoppel damages is optimal. *See Walser v. Toyota Motor Sales, U.S.A., Inc.*, 43 F.3d 396, 402 (8th Cir. 1994) (promissory estoppel damages were properly limited to reliance damages where lost profits were "far from a certainty"); *Merex A.G. v. Fairchild Weston Systems, Inc.*, 29 F.3d 821, 826 (2d Cir. 1994) ("If successful [on a promissory estoppel claim], the plaintiff is not entitled, as of right, to expectation damages; the court retains the discretion to award relief to avoid 'injustice,' and can mold that relief 'as justice requires.' "); *Chedd-Angier Production v. Omni Publications Int.*, 756 F.2d 930, 937 (1st Cir. 1985) (plaintiff was properly allowed to recover expectation damages on promissory estoppel claim; "whether to charge full contract damages, or something less, is a matter of discretion delegated to the district court"); *Green v. Interstate United Management Serv. Corp.*, 748 F.2d 827, 831 (3d Cir. 1984) (recoverable damages on promissory estoppel claim were properly limited to reliance damages given the "manifestly contingent nature" of the promises in question); *Toscano*, 21 Cal. Rptr. 3d at 737, 739 (explaining that because promissory estoppel is rooted in equity, trial courts have the power to "fashion remedies in the interests of justice" and award damages that are "proven with reasonable certainty"); *Hunter v. Hayes*, 533 P.2d 952, 954 (Colo. Ct. App. 1975) ("When a plaintiff's recovery is predicated on findings of a promise and detrimental reliance thereon, there is no fixed measure of damages to be applied in every case. Rather, the amount of damages should be tailored to fit the facts of each case and should be only that amount which justice requires.").

bid of $7,131.60 to the general contractor to perform the paving portion of the project. *Id.* The general contractor then incorporated the subcontractor's bid into its own bid for the project. *Id.* Shortly thereafter, the subcontractor informed the general contractor that it would not perform the work for the price it had originally quoted in its bid. *Id.* at 758-59. Ultimately, the general contractor obtained a replacement pavement subcontractor to complete the work at a cost of $10,948.60. *Id.* at 759. The *Drennan* court affirmed the trial court's determination that the general contractor was entitled to $3,817, the difference between the subcontractor's bid and the amount that the general contractor had to pay the replacement subcontractor to complete the work. *Id.* at 759, 761.

In the decades since *Drennan*, courts have consistently and uniformly applied the same measure of damages for promissory estoppel claims arising from a subcontractor's repudiation of its obligations to a general contractor. *See, e.g.*, *John Price Associates, Inc. v. Warner Elec., Inc.*, 723 F.2d 755, 756-57 (10th Cir. 1983) (appropriate measure of damages for general contractor's promissory estoppel claim was the difference between nonperforming electrical subcontractor's bid and the bid of the substituted subcontractor that completed the work); *Preload Technology v. A.B. & J. Const. Co., Inc.*, 696 F.2d 1080, 1091, 1093 (5th Cir. 1983) (damages were properly calculated as the difference between the original subcontractor's bid and the replacement subcontractor's bid); *Janke Const. Co., Inc. v. Vulcan Materials Co.*, 527 F.2d 772, 780 (7th Cir. 1976) (general contractor was entitled to award representing the difference between subcontractor's quoted prices for certain construction materials and the cost of replacement materials); *Double AA Builders v. Grand State Const.*, 114 P.3d 835, 837, 843 (Ariz. Ct. App. 2005) (upholding award consisting of the difference between nonperforming insulation subcontractor's bid and the cost of a replacement subcontractor); *Riley Bros. Constr., Inc. v. Shuck*, 704 N.W.2d 197, 204 (Minn. Ct. App. 2005) (damages were properly computed as the difference between masonry subcontractor's unperformed bid and the amount paid to two replacement subcontractors to complete the work); *Branco Enterprises v. Delta Roofing*, 886 S.W.2d 157, 158, 161 (Mo. Ct. App. 1994) (award based upon the difference between roofing subcontractor's bid and the amount a substitute subcontractor charged was necessary to prevent injustice). We see no reason to depart from the well-established measure of damages used in *Drennan*.

Interestingly, despite the consensus that the measure of damages adopted in *Drennan* is appropriate in the type of situation presented here, courts have not definitively labeled this measure ''expectation'' or ''reliance'' damages. *See* Edward Yorio & Steve

Thel, *The Promissory Basis of Section 90*, 101 Yale L.J. 111, 146 (1991) (noting the ambiguity in the caselaw with respect to classifying this measure of damages). Scholars appear to agree, however, that the *Drennan* measure of damages is, in fact, expectation damages. *See id.* (concluding that this measure represents expectation damages, even if occasionally labeled ''reliance damages''); W. David Slawson, *The Role of Reliance in Contract Damages*, 76 Cornell L. Rev. 197, 221-22 (1990) (discussing the near impossibility of proving true reliance damages in the subcontract-bidding context and indicating that the *Drennan* measure of damages represents expectation damages); Charles L. Knapp, *Reliance in the Revised Restatement: The Proliferation of Promissory Estoppel*, 81 Colum. L. Rev. 52, 57 n.35 (1981) (noting the ambiguity in the caselaw on this issue and stating that an award of damages based upon the difference between the nonperforming subcontractor's bid and the amount paid to a replacement subcontractor is ''the classic expectation remedy'').

As previously noted, Dynalectric's bid was for $7,808,983. C&S was forced to pay $10,310,598 to three replacement subcontractors to complete the work that Dynalectric refused to perform. Thus, the district court awarded C&S $2,501,615, the difference between Dynalectric's bid and the amount C&S paid to the replacement subcontractors. This measure of damages placed C&S in the same position that it would have occupied if Dynalectric had performed as it promised, and thus, it constitutes expectation damages.

It is plain that justice required this measure of damages and that the damages the district court awarded were foreseeable and reasonably certain. As the district court found, Dynalectric made an unequivocal promise by submitting a bid to C&S for the electrical subcontracting of the Project. Dynalectric thereafter repeatedly assured C&S of the accuracy of the bid that it had submitted. The record demonstrates that Dynalectric fully anticipated that C&S would rely on its bid by incorporating it into its own bid for the Prime Contract. The record also shows that Dynalectric is an experienced and sophisticated subcontractor that could readily anticipate that C&S would be forced to use replacement electrical subcontractors at a higher cost to complete the work that it refused to perform. Finally, the damages that the district court awarded were reasonably certain because C&S presented detailed evidence showing that $2,501,615 represented the difference between Dynalectric's original bid and the amount that the three replacement subcontractors charged.

## CONCLUSION

The district court correctly determined that C&S was entitled to expectation damages. Justice required using this measure of damages, and the damages that the district court awarded were foreseeable and reasonably certain. Accordingly, we affirm the district court's judgment granting C&S expectation damages.