# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL HOHL CARSON VALLEY, A NEVADA CORPORATION; T. MICHAEL HOHL, AN INDIVIDUAL; AND KAREN FINDLAY HOHL, AN INDIVIDUAL,
Appellants,
vs.
HELLWINKEL FAMILY LIMITED PARTNERSHIP, A NEVADA LIMITED PARTNERSHIP; HELLWINKEL FAMILY, LLC, A NEVADA LIMITED LIABILITY COMPANY; C.O.D. GARAGE COMPANY, A NEVADA CORPORATION; AND HELLWINKEL ENTERPRISES, INC., A NEVADA CORPORATION
Respondents.

No. 73285





ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____ S. Young
DEPUTY CLERK

## *ORDER OF REVERSAL AND REMAND*

This is an appeal from a district court judgment following a bench trial involving breach of contract, breach of the covenant of good faith and fair dealing, and waste claims centering on contamination of, and failure to repair, a leased property. Ninth Judicial District Court, Douglas County; Nathan Tod Young, Judge.

The district court found that appellants (collectively Hohl) breached their contract with respondents (collectively Hellwinkel) and that Hohl committed the intentional tort of waste. Hohl argues that the district court erred by relying on repair estimate bids to award $129,825.65 for breach of contract over Hohl's objections that the bids amounted to inadmissible hearsay. Hohl additionally argues that the district court erred by awarding $284,079.16 for waste because Hohl hired an environmental remediation vendor to restore the property to its original condition, which

culminated in the Nevada Division of Environmental Protection issuing a letter that stated that no further action was needed to correct the damage to the property. Hohl argues that he thereby remediated the damages at no cost to Hellwinkel. Hohl further contends that lost rental value is not an appropriate measure of damages for waste. We agree with Hohl and reverse the judgment of the district court and remand this matter to the district court for proceedings consistent with this order.

*The district court abused its discretion by admitting the repair estimate bids over Hohl's hearsay objection*

"The district court has considerable discretion in determining the admissibility of evidence and this court will not disturb a district court's ruling absent an abuse of that discretion." *In re Termination of Parental Rights as to N.J.*, 116 Nev. 790, 804, 8 P.3d 126, 135 (2000). An error in the admission of evidence does not require reversal unless "the error substantially affected the rights of the appellant." *Hallmark v. Eldridge*, 124 Nev. 492, 505, 189 P.3d 646, 654 (2008). An error substantially affects the rights of the appellant if "but for the error, a different result 'might reasonably have been expected.'" *Id.* (quoting *Beattie v. Thomas*, 99 Nev. 579, 586, 668 P.2d 268, 273 (1983), and citing *Peterson v. Pittsburg Silver Peak Gold Mining Co.*, 37 Nev. 117, 138, 140 P. 519, 527 (1914)).

The district court admitted the repair estimate bids under NRS 51.075. NRS 51.075(1) allows admission of a statement that would otherwise be excluded as hearsay "if its nature and the special circumstances under which it was made offer assurances of accuracy not likely to be enhanced by calling the declarant as a witness, even though the declarant is available." By its plain terms, NRS 51.075 requires both that the statement have sufficient guaranties of trustworthiness and that its accuracy is "not likely to be enhanced by calling the declarant as a witness, even though the declarant is available." *Cf.* NRS 51.315 (residual hearsay

exception for when the declarant is unavailable). A district court should apply the residual hearsay exception for an available witness "rarely and only in exceptional circumstances." *State v. Phillips*, 840 N.W.2d 500, 518 (Neb. 2013); *see also Fong v. Am. Airlines, Inc.*, 626 F.2d 759, 763 (9th Cir. 1980) (addressing the federal version of the residual hearsay exception and holding that the "exception is not to be used as a new and broad hearsay exception, but rather is to be used rarely and in exceptional circumstances"); *Flores v. State*, 69 S.W.3d 864, 876 (Ark. 2002) ("The residual hearsay exception was intended to be used very rarely, and only in exceptional circumstances.").

The district court's ruling lacked any finding that calling the available contractors would not enhance an accurate understanding of the bids. Further, the circumstances surrounding the bids themselves do not otherwise assure that they are an accurate measure of the cost to repair the property to original condition minus normal wear and tear as the lease required. The disparity between some of the bid amounts shows that cross-examination of the contractors would be helpful to understand, for example, the instructions understood by the contractors in making their bids; the scope of the work necessary; and whether the repairs were to return the property to new condition, original condition with normal wear and tear, or to upgrade the property. While the bids were admitted through Hellwinkel's testimony, and Hellwinkel was subject to cross-examination about the instructions he gave to the contractors, the contractors themselves would add specificity and accuracy to the court's understanding of their bids.

Because calling the contractors to testify was likely to enhance the accuracy of the bids as a measure of damages for breach of contract, the district court abused its discretion by admitting the repair estimate bids under NRS 51.075. Given that the district court relied on the bids to

determine the cost to repair the property, the district court's error was not harmless and we reverse the award of $129,825.65 for breach of contract.[1]

*The district court erred by awarding Hellwinkel lost rental income damages under the doctrine of waste*

"Waste . . . is permanent or lasting injury done or permitted to be done by the holder of a particular estate to the inheritance, to the prejudice of any one who has an interest in the inheritance." *Price v. Ward*, 25 Nev. 203, 209, 58 P. 849, 849 (1899). Damages under the doctrine of waste are calculated by determining the cost of restoring the property to its condition before the injury, unless the property is destroyed beyond repair, or the cost of restoring the property is greater than the value of the property. *Harvey v. Sides Silver Mining Co.*, 1 Nev. 539, 542 (1865); *see also Waters v. Stevenson*, 13 Nev. 157, 173 (1878) ("[Under the doctrine of waste] appellant might recover the amount it would cost to restore the property to the condition it was in before the wrong committed. . . .); *Clark v. Nev. Land & Mining Co.*, 6 Nev. 203, 208 (1870) (applying the same damages calculation, but holding that certain prospective damages were too uncertain to warrant an award); *Worthington Motors v. Crouse*, 80 Nev. 147, 151, 390 P.2d 229, 231 (1964) (declining to expand the remedy for waste claims to include forfeiture under the Statute of Gloucester absent a Nevada statute permitting such an expansion). The U.S. District Court for the District of Nevada has correctly applied this measure of damages for waste claims. *See Wells Enters. v. Wells Bloomfield, LLC*, 989 F. Supp. 2d 1055, 1059 (D. Nev. 2013). Moreover, the majority of secondary sources also apply this measure of damages for waste claims. *See, e.g.,* Herbert Thorndike Tiffany, *The Law of Real Property* § 646 (3d ed. 1932 & Supp. 2018);

---

[1]Because we reverse on this basis, we need not address Hohl's argument that the bids were also inadmissible as undisclosed expert testimony.

*Mortgage and Asset Backed Securities Litigation Handbook* § 5:67 (2018); 93 C.J.S. *Waste* § 25 (2013); Restatement (Second) of Prop.: Landlord and Tenant § 12.2(2) cmt. i (Am. Law Inst. 1977).

The calculation of damages based on lost rental value, on the other hand, is usually reserved for a breach of contractual duty to repair the property or nuisance damages. *See* 49 Am. Jur. 2d *Landlord and Tenant* § 692 (2018); *see also Jaasma v. Shell Oil Co.*, 412 F.3d 501, 509-10 (3d Cir. 2005); *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 270 (Tex. 2004), *holding modified by Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.2d 474 (Tex. 2014); *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 726 P.2d 8, 20 (Wash. 1986). We review "[w]hether a party is entitled to a particular measure of damages . . . de novo." *Dynalectric Co. of Nev., Inc. v. Clark & Sullivan Constructors, Inc.*, 127 Nev. 480, 483, 255 P.3d 286, 288 (2011) (internal quotation marks omitted).

Hellwinkel, as the plaintiff in this lawsuit, had the burden of proving liability and damages for his cause of action for waste. Hellwinkel has not cited Nevada statutory or case authority, neither on appeal, nor in the district court, for the proposition that lost rental value damages are available under the doctrine of waste.[2] As such, Hellwinkel has failed to

---

[2]While the dissent claims that Hohl did not cite to authority or present a cogent argument that lost use damages are not available remedies for intentional waste, Dissent, *infra,* at 2, Hohl cites to Nevada and other jurisdictions' case law that outlines the damages available for waste claims in its opening brief. Hohl specifically argues in its opening brief that lost use damages are not available for waste claims. Hellwinkel, on the other hand, does not address this argument in its answering brief at all. Instead, Hellwinkel argues in its answering brief that the district court did not abuse its discretion in awarding lost use damages because substantial evidence supports that Hellwinkel committed waste and that the waste will always affect the property. Hellwinkel's failure to address Hohl's argument that lost use damages are not available under the doctrine of waste could be

demonstrate that lost rental value damages are proper for the waste claims, and further we conclude that lost rental value damages are not available in Nevada as a remedy for intentional waste.

Here, the district court found that Hohl committed intentional waste and awarded $284,079.16 in damages, which represented the lost rental income during the 13-month remediation period wherein the property could not be leased or sold. However, the district court erred in awarding lost rental income damages because that remedy is not available under the doctrine of waste. Rather, the district court could award only the damages amounting to the cost of restoring the property to its original condition. Since Hohl already remediated the property, at his own cost, and restored the property to the condition it was in before the injury, no damages are proper under the doctrine of waste. *See Harvey*, 1 Nev. at 542.

The dissent relies on the Restatement (Second) of Torts § 929 (Am, Law Inst. 1979) for the proposition that lost use damages are available for intentional waste. However, such reliance is misplaced. This section of the Restatement of Torts involves "a past invasion" of land, or in other words, a trespass to land. *See* Restatement (Second) of Torts § 929 (Am, Law Inst. 1979). The dissent may be correct that damages that occur as a result of an invasion or a trespass can include lost use damages. *Cf. Land Baron Inv. v. Bonnie Springs Family LP*, 131 Nev. 686, 699-700, 356 P.3d 511, 521 (2015) (holding that lost use damages are available for nuisance claims). But, damages for trespass and invasions of land are inapplicable in this case because Hellwinkel did not allege a trespass or invasion claim.

---

construed as a confession of error. *See Bates v. Chronister*, 100 Nev. 675, 682, 691 P.2d 865, 870 (1984) (holding that failure to respond to an argument in an answering brief can be a confession of error). Moreover, while Hellwinkel provides some supplemental authorities, neither involve remedies under the doctrine of waste.

SUPREME COURT
OF
NEVADA

(O) 1947A

6

Even though waste claims and trespass (or invasion) claims both deal with damages to property, the doctrine of waste is distinct from the doctrine of trespass. *See* Thomas W. Merrill, *Trespass, Nuisance, and the Costs of Determining Property Rights*, 14 J. Legal Stud. 13, 41 (1985) (explaining that as opposed to trespass, when interests in the property are divided over time, courts resolve damages to property under "quite different principles" namely "the law of waste"). Thus, the dissent's reliance on secondary sources and case authority dealing with remedies for past invasions or trespasses is misplaced.[3]

Accordingly, we conclude the district court abused its discretion by admitting the repair estimate bids over Hohl's hearsay objection and

---

[3]In addition to trespass case law, the dissent also relies on two cases from other jurisdictions for the proposition that lost use damages can be awarded under the doctrine of waste. Neither of these cases hold that lost use damages can be awarded under the doctrine of waste, and both, in fact, hold to the contrary. *Winans v. Valentine*, 54 P.2d 106, 109 (Or. 1936) ("[t]he measure of damages for waste is the diminution of the market value of the property caused by the injury."); *Ault v. Dubois*, 739 P.2d 1117, 1120 (Utah Ct. App. 1987) ("the measure of damages for permanent injury to land is the difference in the market value of the land immediately before and immediately after the injury."). The dissent also relies on two secondary sources. First, the dissent cites to the Restatement (Second) of Property: Landlord and Tenant § 12.2 cmt. p (Am. Law Inst. 1977). This source is inapplicable because it deals with permissible changes to property and not intentional waste. The dissent should instead look to § 12.2 cmt. i, which deals with impermissible changes to property and intentional waste. This section and its comments do not mention lost rental income as a remedy for intentional waste. *See* Restatement (Second) of Prop.: Landlord and Tenant § 12.2 cmt. i (Am. Law Inst. 1977). The dissent also relies on 49 Am. Jur. 2d *Landlord and Tenant* § 667 (2018). This source *does* state that lost rental value damages are a remedy for intentional waste. However, the source provides no caselaw to support this assertion. Thus, we find this source unpersuasive and decline to adopt its approach.

erred in awarding lost rental value damages under the doctrine of waste. Therefore, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Gibbons

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

cc:  Hon. Nathan Tod Young, District Judge
     David Wasick, Settlement Judge
     Gunderson Law Firm
     Bowen Hall
     Douglas County Clerk

MICHAEL HOHL CARSON VALLEY VS. HELLWINKEL FAMILY      No. 73285
LTD. P'SHIP

PICKERING, J., concurring in part and dissenting in part:

The district court found that Hohl committed the tort of intentional waste by dumping environmental contaminants on the leased property.  After the lease expired, Hohl undertook to remediate the contamination.  Hohl succeeded, eventually obtaining for Hellwinkel a "no further action" letter from the Nevada Division of Environmental Protection, but the cleanup took 13 months.  The district court found, and the evidence supports, that "the property was incapable of being leased or sold during the remediation period."  To compensate Hellwinkel for the loss of use of its property while the cleanup progressed, the district court awarded Hellwinkel $284,079, amounting to 13 months' rent.

The district court correctly applied the law in calculating Hellwinkel's damages for Hohl's intentional waste.  As a general rule, "when an injury is done to property, the cost of restoring the property to its condition before the injury [is] the proper measure of damages, unless there is total destruction of the property or the cost of restoration exceeds the value of the property," in which event the measure of damages is diminution in value. *Wells Enters. v. Wells Bloomfield, LLC*, 989 F. Supp. 2d 1055, 1059 (D. Nev. 2013) (citing *Harvey v. Sides Silver Mining Co.*, 1 Nev. 451, 453 (1865)); *see* 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 5.2(1) (2d ed. 1993) (discussing repair costs and diminished value as alternative general damages measures for physical harm to real property).  The majority (and Hohl) cite authority reciting the general rules just stated.  None of the

authorities they cite says a plaintiff cannot recover loss-of-use damages for intentional waste. Despite this, the majority credits Hohl's unsupported argument and categorically holds, as a matter of law, "that lost rental value damages are not available in Nevada as a remedy for intentional waste." Majority, *supra*, at 6.[1]

Stating a general rule of damages does not implicitly outlaw or exclude recovery of other forms of consequential damages. And, in fact, it is black-letter law that the damages available for harm to property (short of total destruction of value) include, if proved, damages attributable to loss of use in addition to repair costs or diminished value:

> If one is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction of value, the damages include compensation for
>
> (a) the difference between the value of the land before the harm and the value after the harm, or at his election in an appropriate case, the cost of restoration that has been or may be reasonably incurred,
>
> (b) *the loss of use of the land*, and
>
> (c) discomfort and annoyance to him as an occupant.

---

[1] Hohl's failure to cite authority supporting that a plaintiff cannot recover loss-of-use damages for intentional waste should defeat its position. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) ("It is appellant's responsibility to present relevant authority and cogent argument; issues not so presented need not be addressed by this court."). Despite Hohl's default, the majority faults Hellwinkel for not refuting Hohl's point. Not only is this unfair, in fact, Hellwinkel cites § 929 of the Restatement (Second) of Torts (Am. Law Inst. 1979) and *Guaranty First Trust Co. v. Textron, Inc.*, 622 N.E.2d 597, 600 (Mass. 1993), both of which are set out in the text, in its supplemental authorities, to which Hohl did not respond or object.

Restatement (Second) of Torts § 929(1) (Am. Law Inst. 1979) (emphasis added); *see* Restatement (Second) of Prop.: Landlord and Tenant § 12.2 cmt. p (Am. Law Inst. 1977) (recognizing that damages for a tenant's waste "would normally include the cost to the landlord of making the restoration himself and the loss to the landlord due to any delay in making the leased property available for another rental"); *see also Wells Enters.*, 989 F. Supp. 2d at 1060-61 (holding that the plaintiff failed to prove damages for waste when the plaintiff neither claimed nor proved lost rental income during the remediation period and failed to establish diminution of value or restoration costs).

Applying these principles to this case, the waste damage award should stand. Hohl managed to remediate the contamination, so the property was not a total loss. And since Hohl paid to remediate the contamination, Hellwinkel did not incur repair or restoration costs. But as the district court found, Hellwinkel incurred damages because it suffered a loss of use of the property for the 13 months it took to remediate the waste, which the district court valued using the monthly rent Hohl had been paying Hellwinkel before the lease expired. Damages for loss of use measured by lost rent are properly recoverable in an environmental contamination case such as this. *See Guar.-First*, 622 N.E.2d at 600 ("[W]here damage to real property is not permanent, the measure of recovery is the reasonable expense of repairing the injury plus the intervening loss of rental value for the period reasonably needed to repair the injury."); Hon. James J. Brown & Wendy Fleishman, *Proving and Defending Damage Claims: A Fifty-State Guide* § 5.04[B] (Supp. 2011 & Supp. 2018) ("As suggested in Restatement (Second) Section 929 at (1)(b), loss of rental value or use value may also be a measure of damages for

SUPREME COURT
OF
NEVADA

(O) 1947A

3

temporary injury to contaminated property."); *see also Winans v. Valentine*, 54 P.2d 106, 107-09 (Or. 1936) (affirming an award for lost rental income in a waste claim where "it took considerable time to put the premises in condition to rent the same to some one [sic] else"); *Ault v. Dubois*, 739 P.2d 1117, 1120 (Utah Ct. App. 1987) (approving of a jury instruction in a waste claim that advised the jury that damages could include "a reasonable amount to compensate for the [loss of use or diminution of rental value] of the property during the time reasonably required for the making of repairs") (alteration in original); 49 Am. Jur. 2d *Landlord and Tenant* § 667 (2018) ("[T]he landlord in an action for waste may, upon proper proof, recover special damages for loss of the use or rental of the property for the period necessarily required in making repairs.").

While I would affirm the judgment awarding damages for waste, I agree with my colleagues that reversal is required as to the repair cost award. Affirming in part and reversing in part on damages supports vacating and remanding for the district court to redetermine fees in the first instance. I therefore concur in part and dissent in part.

_____, J.
Pickering

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre