FILED

OCT 14 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DRAFT BARS LLC,<br>        Debtor. | BAP No. NV-21-1054-GTL<br><br>Bk. No. 2:16-bk-16656-GS |
| LENARD SCHWARTZER, Chapter 7<br>Trustee,<br>        Appellant,<br>v.<br>ANHEUSER BUSCH, LLC; ANHEUSER-<br>BUSCH COMPANIES LLC,<br>        Appellees. | Adv. No. 2:17-ap-1176-GS<br><br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Gary A. Spraker, Bankruptcy Judge, Presiding

Before: GAN, TAYLOR, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Draft Bars, LLC ("Debtor") built mobile bar units,

called "Bar Pods," for appellees Anheuser Busch, LLC and Anheuser-Busch

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the

Companies, LLC (together "AB"), which AB and its distributors used to market Budweiser beer at sporting events, concerts, and other events. Debtor also provided management services to AB in connection with the operation of the Bar Pods at certain events at AB's request.

Debtor alleged an oral agreement with AB which permitted Debtor to directly market, deliver, and manage the Bar Pods at other third-party events. AB disagreed that any such agreement existed.

After filing a chapter 11 case, Debtor filed an adversary complaint against AB for breach of the alleged third-party marketing, delivery and management contract and related claims and sought over $69 million in future lost profits. Although the bankruptcy court did not determine whether there was an enforceable contract, it granted summary judgment in favor of AB because, if a contract existed, it would have been terminable at will; thus, future lost profits were not recoverable under state law. We agree and AFFIRM.

## FACTS

### A. Prepetition Events

Debtor was a Nevada LLC, wholly owned by Michael Manion ("Manion"). Beginning in late 2014, Debtor began building Bar Pods for AB. After constructing the Bar Pods, Debtor sometimes provided delivery and management services at AB's request. AB supplied written contracts

---

Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of

2

for the construction of each Bar Pod and for reimbursement of Debtor's expenses incurred in delivering and managing the Bar Pods at events requested by AB. Each contract indicated that Debtor was an independent contractor.

Manion testified that in 2015, Ari Opsahl ("Opsahl"), AB's then-director of sales and marketing, requested a proposal for standard pricing of management services. Manion states that after he submitted a proposal, Opsahl informed him that AB's operating expense budget was spent. According to Manion, Opsahl then developed the "Sustainable Marketplace Agreement" ("SMA"), which expanded what Debtor had already been doing in managing the Bar Pods. Manion contends that the terms of the SMA are reflected in a November 15, 2015 email from Opsahl which states:

> Mike – we are trying to expand our mobile asset strategy beyond the contracted events that we have with you and Fusion. What we would like to do is have you activate the PODs at your own expense negotiated with the event that is requesting. We can provide the beer for the events to help cover your cost. Does that make sense? It's a model we have looked into with the food trucks to lower or eliminate ABs operating costs. You are more than welcome and encouraged to advertise these assets in the marketplace as long as the product being sold is AB.

AB disputes that it had a service agreement with Debtor. Instead, it says that it held a competitive bid process in the fall of 2015 and selected

---

Civil Procedure.

Fusion Marketing ("Fusion") to manage and operate its mobile assets, including the Bar Pods. Manion was aware of AB's decision but testified that Debtor continued to provide management services related to some of the Bar Pods, and the record shows that through the spring of 2016, AB continued to direct its account managers to schedule activation of certain Bar Pods through Bar Pods, LLC, an entity apparently affiliated with Debtor.[2]

In May 2016, AB's Manager of Event Activation announced that he was leaving AB and informed AB's distributors to contact Fusion for Bar Pod needs. Manion then contacted AB and requested a formal arrangement for managing the Bar Pods. Manion states that he submitted a proposal, but by May or June of 2016, AB directed Bar Pods LLC to turn over scheduling and operation of the remaining Bar Pods to Fusion. AB took possession of the Bar Pods over the next several months.

B.    **The Adversary Complaint And Motion For Summary Judgment**

In December 2016, prior to completing its contract to manufacture its last Bar Pod for AB, Debtor filed a chapter 11 petition. Three days after the petition date, Manion sent a letter to AB outlining Debtor's position regarding the alleged breach of the SMA. Manion stated that after Debtor "delivered each pod complete," they "have since been managed by another company over the years." He also wrote, "[w]e still have not received any

---

[2] Debtor did not report any interest in other businesses in its Schedules and Statements, but the bankruptcy court order converting the case states that Debtor was

Service and/or Activation contract that's been promised to us at every turn, requesting us to formulate numerous proposals which we have submitted with no response."

Debtor filed an adversary complaint against AB in April 2017, asserting claims for: (1) Breach of Contract; (2) Breach of Covenant of Good Faith and Fair Dealing; (3) Unjust Enrichment; and (4) Promissory Estoppel. In March 2018, the bankruptcy court appointed a chapter 11 trustee and, on the trustee's motion, converted the case to chapter 7 in May 2018. Trustee substituted into the adversary proceeding on behalf of the estate.

In October 2019, AB filed a motion for summary judgment. It argued that Manion admitted, in the December 2016 letter and in his deposition, that there was no service contract between Debtor and AB, and therefore the claims for breach of contract and breach of the covenant of good faith and fair dealing failed as a matter of law. AB alternatively argued that under Nevada law, a contract without a stated term is terminable at will, and consequently, future lost profits damages are not recoverable. Manion admitted in his deposition that the SMA had no set term and "from day one, it was an event-by-event basis."

AB also asserted that any contract to manage the Bar Pods would have incorporated AB's general terms, which state that Debtor is an

the parent company of Bar Pods, LLC.

5

independent contractor. And, under Nevada law, an independent contractor relationship is also terminable at will.

AB contended that Debtor's claims for unjust enrichment and promissory estoppel must fail because Debtor failed to introduce any evidence of reliance-based damages. AB argued that the promissory estoppel claim was based on the same alleged promise as the breach of contract claim but, under that alleged agreement, all costs and expenses were Debtor's responsibility. Because Debtor failed to identify any management costs incurred after AB retrieved the Bar Pods, AB argued that summary judgment on counts three and four was also appropriate. Finally, AB sought summary judgment on its affirmative defense to set off any potential liability against its prepetition claim against Debtor, which was based on a breach of the final Bar Pod purchase contract.

Trustee opposed the motion for summary judgment and argued that there was ample evidence to support the existence of a contract. He contended that Manion's statements about the lack of a contract were taken out of context, and he attached a declaration from Manion to clarify those statements.

Trustee admitted that the estate's damages were for lost profits but argued that lost profits were recoverable based on Manion's declaration that the parties understood and agreed that the SMA would be in place for "many years to come." Trustee also maintained that the terms of the SMA

6

were negotiable and did not require incorporation of AB's general terms for service contracts.

Regarding the "reliance-based claims," Trustee argued that the estate had compensable damages caused by AB's failure to immediately retrieve the Bar Pods in June 2016. Manion stated that some Bar Pods remained in Debtor's warehouse until December 2016, and reasonable costs for maintenance, storage, and cleaning totaled $47,800.

Lastly, Trustee argued that AB was not entitled to setoff as a matter of equity because by taking management of the Bar Pods away from Debtor, AB caused financial hardships which contributed to Debtor's inability to finish construction of the Bar Pods.

In reply, AB asserted that Manion's declaration clearly contradicted his prior deposition testimony that the contract had no term, and therefore, should be disregarded as a sham declaration. AB noted that Trustee failed to dispute that any agreement would have been an independent contractor relationship. The court held a hearing on the motion for summary judgment and took the matter under advisement.

## C. The Court's Ruling

On September 29, 2020, the bankruptcy court entered its memorandum decision granting AB's motion for summary judgment on the claims for Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, and Promissory Estoppel. The court also granted summary

judgment on AB's affirmative defense of setoff but denied summary judgment on Trustee's claim for Unjust Enrichment.

The court reasoned that although Manion made statements that no contract existed, construing all reasonable inferences in favor of the nonmoving party, there was a genuine issue of fact about the existence of a contract.

However, the court determined that even if there were a contract as alleged by Trustee, such a contract would have been terminable at will and thus, the estate could not recover lost profits under the holding of *Dalton Props., Inc. v. Jones*, 683 P.2d 30 (Nev. 1984). The bankruptcy court held that, even taking as true Manion's statement that the SMA would be in place for "many years," the alleged contract lacked a definite term and, pursuant to the Restatement (Second) of Contracts § 33, cmt. d, "[w]hen the contract calls for successive performances but is indefinite in duration, the contract is commonly terminable by either party, with or without a requirement of reasonable notice."

Additionally, the court agreed with AB that any contractual relationship formed with Debtor would have been as an independent contractor based on the imposition of AB's standard terms and conditions. The court noted that Trustee did not dispute the characterization of Debtor's relationship with AB as that of an independent contractor.

The bankruptcy court held that a claim for breach of the implied covenant of good faith and fair dealing cannot be based on the same

8

conduct as a separately pleaded breach of contract claim. Because Trustee did not differentiate between the alleged facts supporting the breach of contract claim and the breach of the implied covenant of good faith and fair dealing, summary judgment on that count was also appropriate for the reasons stated in *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1252 (D. Nev. 2016).

The court denied summary judgment on Trustee's claim for unjust enrichment because Debtor could provide an opinion of the value of its services, which was evidence of damages. It granted summary judgment on the claim for promissory estoppel because Trustee did not allege a promise, separate from the alleged contract, on which Debtor relied.

The bankruptcy court granted summary judgment on AB's affirmative defense of setoff because Trustee did not dispute that the elements for the defense were satisfied, and he failed to demonstrate compelling circumstances against the presumption of enforcing setoff.

After the court granted partial summary judgment, the parties settled the remaining claim for unjust enrichment and stipulated to certify the court's summary judgment order as a final order pursuant to Civil Rule 54(a), made applicable by Rule 7054(a). The bankruptcy court entered an order dismissing the unjust enrichment claim and certified its order as final. Trustee timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err by granting summary judgment in favor of AB on Trustee's claims?

Did the bankruptcy court err by granting summary judgment on AB's affirmative defense of setoff?

## STANDARDS OF REVIEW

We review the bankruptcy court's grant of summary judgment de novo. *Lewis v. Kaelin (In re Cresta Tech. Corp.)*, 583 B.R. 224, 227 (9th Cir. BAP 2018). Under de novo review, we look at the matter anew, giving no deference to the bankruptcy court's determinations. *Id.*

Summary judgment may be appropriate on a claim that involves a mixed question of law and fact if the underlying facts are undisputed. *Citicorp Real Est., Inc. v. Smith*, 155 F.3d 1097, 1103 (9th Cir. 1998); *Miller v. Schuman (In re Schuman)*, 81 B.R. 583, 586 n.1 (9th Cir. BAP 1987) ("[W]here the underlying facts are undisputed, a [bankruptcy] court is free, on a motion for summary judgment, to determine whether the established facts satisfy the statutory standard.").

We review the bankruptcy court's allowance of a setoff for abuse of discretion. *Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 236 (9th Cir. BAP 1991). A bankruptcy court abuses its discretion if it

applies an incorrect legal standard or its factual findings are illogical, implausible, or without support in the record. *TrafficSchool.com v. Edriver, Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

Civil Rule 56(a), made applicable by Rule 7056, provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is material only if it is one that "under the governing substantive law . . . could affect the outcome of the case." *Caneva v. Sun Communities Operating Ltd. P'ship (In re Caneva)*, 550 F.3d 755, 760 (9th Cir. 2008) (quotation omitted). A factual dispute is genuine if "a jury could reasonably find in the nonmovant's favor from the evidence presented." *Emeldi v. Univ. of Or.*, 698 F.3d 715, 730 (9th Cir. 2012).

In reviewing summary judgment, we must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A. The Bankruptcy Court Did Not Err By Granting Summary Judgment On The Breach Of Contract Claim.

To prevail on a breach of contract claim under Nevada law,[3] a plaintiff must prove: (1) the existence of a contract; (2) a breach by the

---

[3] Although not specifically addressed, both parties apply Nevada law to the claims at issue in this case. Accordingly, we accept that Nevada law applies.

defendant; and (3) damages resulting from the breach. *Shaw*, 201 F. Supp. 3d at 1248.

Trustee admits that the only damages sought were future lost profits, but he argues that the SMA was not terminable at will and lost profits are recoverable even if the contract had no definite term.

Under Nevada law, "[w]here a contract provides that either party may terminate the agreement at will, the party so terminated may not recover damages for those profits that he purportedly could have gained over the maximum life of the contract." *Dalton*, 683 P.2d at 31. Trustee argues that the bankruptcy court misapplied *Dalton* because the SMA did not expressly provide that it was terminable at will. We disagree.

The reasoning of *Dalton* applies whether a contract is terminable at will either expressly or implicitly. Compensatory damages for breach of contract should place the injured party in the same position it would have been in had the breach not occurred. "Since a party to a contract which is terminable at the will of another cannot rely on duration of the contract, if damages for lost profits were permitted, the injured party would be in a better position than the terms of the contract allowed." *Id.*

The November 15, 2015 email, which Manion testified contains the terms of the SMA, has no duration. If a contract does not specify a duration, the court typically looks to surrounding circumstances to discern the intent of the parties and may hold that the contract will last for a reasonable time, or that the contract is terminable at will by either party, or

12

terminable upon the occurrence of a specific event or condition. *See e.g.,* 5 *Corbin on Contracts* § 24.29 (2021); 1 Richard A. Lord, *Williston on Contracts* § 4:22 (4th ed. 2014); Restatement (Second) of Contracts § 33, cmt. d.

But we need not determine whether a duration is implied under the circumstances because Trustee did not dispute the characterization of Debtor as an independent contractor either to the bankruptcy court or in his opening brief. He has thus waived the issue. *Mano-Y & M, Ltd. v. Field (In re Mortg. Store, Inc.),* 773 F.3d 990, 998 (9th Cir. 2014) ("A litigant may waive an issue by failing to raise it in a bankruptcy court."); *Smith v. Marsh,* 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."); *Alaska Ctr. For Env't v. U.S. Forest Serv.,* 189 F.3d 851, 858 n.4 (9th Cir. 1999) (stating that an argument waived by an appellant's failure to raise it in its opening brief cannot be raised for the first time in its reply brief).

Under Nevada law, "[a]bsent a contractual provision to the contrary, an independent contractor/principal agency relationship is terminable at **any time at the will of the principal or the agent**." *Kaldi v. Farmers Ins. Exch.,* 21 P.3d 16, 20 (Nev. 2001) (per curiam) (emphasis added). Consequently, if the SMA created a contractual relationship, AB could terminate it at any time and such termination would neither constitute a breach of the contract, nor give rise to damages for lost profits as a matter of law.

**B.  The Bankruptcy Court Did Not Err By Granting Summary Judgment On The Breach Of Implied Covenant Of Good Faith And Fair Dealing Claim.**

Under Nevada law, "every contract imposes upon the contracting parties the duty of good faith and fair dealing." *State, Univ. & Cmty. Coll. Sys. v. Sutton*, 103 P.3d 8, 19 (Nev. 2004) (en banc) (quotation omitted). A party breaches the implied covenant when "the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991).

A breach of the implied covenant is limited to assuring compliance with the express terms of the contract and does not create additional obligations beyond the contract terms. *Shaw*, 201 F. Supp. 3d at 1252. "It is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Id.*

Trustee maintains that his claim for breach of the implied covenant is based on separate conduct. He argues that AB breached the contract by taking possession of the Bar Pods, but it breached the implied covenant by "not only taking away the pods, but taking them away *without giving Draft Bars a reasonable period to execute the agreement,* and by not giving Draft Bars reasonable *notice* prior to taking the pods." App't Op. Brief at 21.

14

This is not separate conduct. It is the exact basis for Trustee's breach of contract claim, and thus, fails as a matter of law. *See Shaw,* 201 F. Supp. 3d at 1252. Furthermore, Trustee did not identify any damages allegedly caused by a breach of the implied covenant other than future lost profits. Because any contract created by the SMA would have been terminable at will at any time, the alleged conduct could not be a breach of the implied covenant and the estate would not be entitled to future lost profits.

**C.      The Bankruptcy Court Did Not Err By Granting Summary Judgment On The Promissory Estoppel Claim.**

Nevada follows the doctrine of promissory estoppel articulated in the Restatement (Second) of Contracts. *Dynalectric Co. of Nev., Inc. v. Clark & Sullivan Constuctors, Inc.*, 255 P.3d 286, 288 (Nev. 2011). Damages for promissory estoppel claims are the same as damages for breach of contract. *Id.* at 289 ("Although the doctrine of promissory estoppel is conceptually distinct from traditional contract principles, there is no rational reason for distinguishing the two situations in terms of the damages that may be recovered." (cleaned up)); Restatement (Second) of Contracts § 90 cmt. d ("A promise binding under this section is a contract, and full-scale enforcement by normal remedies is often appropriate.").

Trustee argues that the promissory estoppel claim was pleaded in the alternative to the breach of contract claim, and, because the court did not decide whether a contract existed, summary judgment on the promissory estoppel claim was not warranted.

15

Regardless of the bankruptcy court's holding about the existence of a contract, the damages asserted by Trustee consist only of future lost profits, which, as discussed above, are not available when the contract is terminable at will. And while Trustee argued that Debtor incurred storage and maintenance costs after the SMA was terminated but before AB took possession of the Bar Pods, he did not identify any separate promise to support a claim for those damages.[4]

## D. The Bankruptcy Court Did Not Err By Granting Summary Judgment On AB's Defense Of Setoff.

Subject to exceptions that are not applicable here, § 553 provides that bankruptcy does "not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case . . . against a claim of such creditor against the debtor that arose before the commencement of the case."

To establish a right to setoff under § 553, AB must prove two elements: timing and mutuality. *Camelback Hosp., Inc. v. Buckenmaier (In re Buckenmaier)*, 127 B.R. 233, 238 (9th Cir. BAP 1991) (citing *Verco Indus. v. Spartan Plastics (In re Verco Indus.)*, 704 F.2d 1134, 1139 (9th Cir. 1983)). The timing element requires that both parties have prepetition claims. *Id.*

---

[4] Pursuant to the stipulation and settlement of the unjust enrichment claim, AB agreed to pay Debtor's storage, maintenance, and cleaning costs in the asserted amount of $47,800. The parties stipulated that the settlement amount would be set off against AB's claim.

Mutuality requires that "something must be 'owed' by both sides." *Id.* (quoting 4 Collier on Bankruptcy, ¶¶ 553.04, 553.18 (15th ed. 1990)).

Setoffs in bankruptcy are "generally favored," and there is a presumption that they be enforced. *Carolco Television Inc. v. Nat'l Broad. Co. (In re De Laurentiis Ent. Grp. Inc)*, 963 F.2d 1269, 1277 (9th Cir. 1992). "[B]ecause the setoff right is an established part of our bankruptcy laws, it should be enforced unless compelling circumstances require otherwise." *In re Buckenmaier*, 127 B.R. at 237 (cleaned up).

Trustee does not dispute that AB has established the requisite elements for setoff. Instead, he argues that AB's unilateral removal of the Bar Pods crippled Debtor's finances which resulted in AB's claim against Debtor. He maintains that AB's "unclean hands" should eliminate any ability to set off liability against the claim.

Because the underlying facts pertaining to AB's removal of the Bar Pods from Debtor's possession are undisputed, the bankruptcy court could decide the issue on summary judgment. *Citicorp Real Est., Inc. v. Smith*, 155 F.3d at 1103; *In re Schuman*, 81 B.R. at 586 n.1. The bankruptcy court held that Trustee did not present any evidence of compelling circumstances and therefore setoff should be allowed. We agree and see no abuse of discretion in the bankruptcy court's decision.

Additionally, we note that the parties stipulated to allow setoff of restitutionary damages of $47,800 against AB's claim. Because we affirm

the bankruptcy court's ruling on summary judgment, no other damages remain which might be set off and consequently, the issue is moot.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order granting summary judgment.